[Civ. No. 28069. Fourth Dist., Div. One. Apr. 24, 1984.]

LEONARD ZLOTOFF, Plaintiff and Respondent, v.
ALEXANDER W. TUCKER, Defendant and Appellant.

Counsel

Oliver, Sullivan, Cummins & Wertz and Steven G. Amundson for Defendant and Appellant.

Duckor & Spradling, Morgan Cloud and Paula Martin Hui for Plaintiff and Respondent.

Opinion

**BROWN (Gerald), P. J.**—Defendant Alexander Tucker appeals a judgment after court trial favoring plaintiff Leonard Zlotoff.

Zlotoff owned two adjoining vacant lots. Nearby in the same block Zlotoff also owned a skating rink and adjoining parking lot next to E. R. Cota's

office building. For several years Cota, his employees and visitors used Zlotoff's parking lot without permission, angering Zlotoff.

In October 1977 Zlotoff listed his vacant lots for sale with a realtor. Tucker offered in writing to buy the property. Before accepting Tucker's offer, Zlotoff told Tucker about his anger toward Cota over misuse of the skating rink parking lot and said he did not want Cota to become owner of the vacant lots. Zlotoff asked Tucker if he was related to Cota; Tucker said no. Unbeknown to Zlotoff, Tucker was in fact Cota's nephew.

After negotiation Zlotoff and Tucker in writing modified Tucker's written offer by adding a clause reading: "Language concerning restriction of resale of property by buyer to E. R. or R. E. Cota will be furnished to escrow instructions." Later Tucker signed escrow instructions reading: "These instructions are in no way meant to amend, modify or supersede any prior agreement entered into by the parties hereto especially in regard to the following: . . . Agreement between the parties that buyer is restricted to resale property to E. R. Cota or R. E. Cota." Before escrow closed Tucker further agreed in writing:

"Buyer knows and understands sellers reluctance to sell the subject property to E. R. Cota or R. E. Cota directly or for their benefit, and in consideration of seller selling to him agrees:

"Buyer has represented and warrants that he is not acting as agent for, (and will restrict himself from deeding to) the aforementioned persons or their agents.

"Buyer agrees that for a period of ten (10) years or until seller divests himself of title and control of the skating rink property, whichever occurs first, he will hold himself and his assigns liable in damages to seller, should he allow subject property to inure to the benefit of the aforementioned persons.

"Should there be a breach of this continuing warranty this document shall be admissible as a stipulation of damages to the seller, in the amount of $20,000.00 plus attorneys costs, and interest at the highest legal rate from date of the breach."

In November 1977 escrow closed and Tucker took title to the vacant lots. In June 1978 Cota gained title to the vacant lots under a property exchange with simultaneous closing of concurrent escrows involving Tucker, Cota and a third party. Zlotoff learned Cota owned the vacant lots when Cota applied to rezone the property. Zlotoff was upset and frustrated.

In January 1979 Zlotoff sued Tucker for breach of contract and fraudulent false promise. The matter was tried to the court. At trial the court allowed Zlotoff to amend his complaint to allege Tucker fraudulently induced Zlotoff to sell him the vacant lots by misrepresenting his relationship with Cota. After trial the court found Tucker was liable to Zlotoff for $20,000 plus attorney fees and interest. The court also awarded Zlotoff $2,500 punitive damages for Tucker's fraud. Tucker appeals. We affirm.

Under Civil Code[1] section 1670 in effect in 1977: "Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section."

Under section 1671 in effect in 1977: "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damages sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

In enforcing the parties' liquidated damages agreement, the court found "the existence of a contract here. It's a contract for liquidated damages and I think that the amount is reasonable. I think it would be very difficult to calculate the amount by any other means than was used here. It was a figure that he [Zlotoff] before there was any pressure on him he had given to . . . Mr. Cota." ■ Meritlessly asserting there was insufficient evidence for the court's findings damages for breach were difficult to ascertain when the parties entered their agreement and the $20,000 liquidated damages amount resulted from the parties reasonably trying to state an amount reasonably related to actual damages, Tucker contends the court erred in enforcing the liquidated damages clause under section 1671. At the time Zlotoff sold Tucker the vacant lots it was reasonably foreseeable, given Zlotoff's anger toward Cota, Zlotoff would suffer mental and emotional damages if Tucker breached the agreement by conveying the property to Cota. Zlotoff testified: "It was very difficult evaluating my pain and suffering and the inconvenience and discomfort I had with Cota all of these years." Under these circumstances the court properly found such damages were difficult to ascertain when the parties entered into their agreement. Further, on this record the court could properly find the $20,000 liquidated damages clause resulted from the parties' reasonable efforts to ascertain what damages Zlotoff would suffer if Tucker resold the vacant lots to Cota. Before accepting Tucker's offer, Zlotoff told Tucker about his feelings toward Cota and his desire Cota not become owner of the vacant lots. During negotiation the parties specifically discussed $20,000 as the amount of Zlotoff's damages

---

[1] All statutory references are to the Civil Code unless otherwise specified.

if the property fell into Cota's hands; Zlotoff also told Tucker $20,000 was the difference between the listing price and a price he had earlier quoted to Cota. Further, Tucker signed the $20,000 liquidated damages clause only after Zlotoff agreed to Tucker's requested modifications limiting the period of Tucker's liability for reselling the property to Cota. On this record the court properly found the parties' liquidated damages agreement was valid and enforceable under section 1671.

■ Tucker contends the court should not have enforced the parties' liquidated damages agreement because such agreement improperly restricted his right to dispose of the vacant lots Zlotoff sold him. Under section 711: "Conditions restraining alienation, when repugnant to the interest created, are void." However, section 711 prohibits only unreasonable restraints on alienation: "[A] direct relationship exists between the *justification* for enforcement of a particular restraint on the one hand, and the *quantum of restraint,* the actual practical effect upon alienation which would result from enforcement, on the other. Thus, the greater the quantum of restraint that results from enforcement of a given clause, the greater must be the justification for that enforcement." (*Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943, 948-949 [148 Cal.Rptr. 379, 582 P.2d 970].) Here the court said: "It seems to boil down to the question of whether or not the restraint is reasonable in looking at it from all sides. I'm inclined to think that this restraint was a reasonable one, and I'm so finding for the reason that the feelings of Mr. Zlotoff which have been termed by the defense a vendetta were ones that a reasonable person can have, where his property is interfered with, trespassed upon and so forth, and where attempts to solve it by amicable discussions have been fruitless." Under the circumstances here the court properly found the limited restrictive clause was reasonable and necessary to give Zlotoff peace of mind after years of hard feelings toward Cota. Any restraint on alienation under the parties' agreement here was minimal. Indeed, nothing in the parties' agreement prevented Tucker from reselling the vacant lots to anyone; rather, Tucker merely agreed to pay Zlotoff an additional $20,000 if he resold the property to E. R. Cota or R. E. Cota. Further, the parties' agreement affected conveyance only as to two specifically named persons and limited any restriction to the earlier of 10 years or the date Zlotoff sold the nearby skating rink. The court properly enforced the parties' liquidated damages agreement.

■ Trial was set for April 22, 1982. Four times between April 20 and April 22, Tucker's attorney asked the court to continue the trial for 60 days because Cota was medically unable to testify at trial. The court denied Tucker's motions to continue the trial. Tucker contends the court denied him a fair trial by preventing him from presenting Cota's testimony. Tucker asserts Cota would have given crucial testimony on the nature of his rela-

tionship with Zlotoff purportedly prompting the liquidated damages agreement between Zlotoff and Tucker. Speculating Cota might have testified Zlotoff never offered to sell him the vacant lots for $20,000 more than the listing price, Tucker further asserts Cota's testimony was crucial to the issue of any damages suffered by Zlotoff resulting from Cota's gaining title to the vacant lots. However, Tucker's claims are without merit. Tucker's attorney waited until April 20, two days before trial, to seek a continuance despite knowing since April 9 Cota would be unavailable to testify at trial. Further, despite the court's suggestions, Tucker did not seek to preserve Cota's testimony by taking his deposition. Moreover, Tucker makes no showing Cota's testimony would have been material to the issues at trial between Zlotoff and Tucker about the enforceability of their liquidated damages agreement; any testimony by Cota would have been at best collateral to the controverted issue whether Tucker and Zlotoff reasonably endeavored to ascertain the actual damages Zlotoff would suffer if Tucker resold the vacant lots to Cota. Cota was not a party to this lawsuit or the agreement between Zlotoff and Tucker. Nothing in the record suggests Cota was present during any negotiations between Zlotoff and Tucker. Further, Tucker misconstrues the measure of damages here. Zlotoff sought damages not for lost profit but rather under a liquidated damages clause based on his anger and frustration toward Cota and the resulting mental and emotional damages he would suffer if Cota gained title to the vacant lots; Tucker makes no showing Cota could have competently testified about such damages. Under the circumstances the court acted well within its discretion in denying Tucker's motions to continue the trial.

■ Tucker contends the court erroneously awarded Zlotoff punitive damages for breach of contract. However, Tucker misconstrues the court's findings. Zlotoff pleaded causes of action for breach of contract and fraudulent false promise; at trial the court allowed Zlotoff to amend his complaint to allege Tucker fraudulently induced Zlotoff to sell him the vacant lots by misrepresenting his relationship with Cota. After trial the court found Zlotoff proved his allegations of both breach of contract and fraud. The court properly awarded Zlotoff punitive damages under section 3294 after specifically finding Tucker committed "rather gross fraud."

After trial the court said "inasmuch as I find that there was fraud in the inducement, the interest will run from the date of the close of escrow on this sale to Tucker." ■ Tucker contends the court should not have awarded interest from the close of escrow because under the parties' agreement any interest on damages was to run only from the date of breach. However, the court found Tucker liable for both breach of contract and fraud. In giving Zlotoff damages for Tucker's fraud, the court acted within its discretion in awarding interest from the close of escrow (see § 3288).

Under the parties' contract Zlotoff is entitled to attorney fees on appeal, which we assess in the sum of $2,500.

The judgment is affirmed.

Cologne, J., and Staniforth, J., concurred.

A petition for a rehearing was denied May 11, 1984, and appellant's petition for a hearing by the Supreme Court was denied July 11, 1984.