**In re Robert McCLURE, Debtor.**

**Fred H. CAMPBELL and Terrell A. Campbell, Plaintiffs,**

**v.**

**Robert McCLURE, Defendant.**

**Adv. No. C85–0692–LM11.**

**Related Bankruptcy Case No. 85–01828–LM11.**

United States Bankruptcy Court, S.D. California.

March 13, 1987.

Alden J. Fulkerson, San Diego, Cal., for plaintiffs.

Dennis D. Burns, El Cajon, Cal., for debtor/defendant.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

### I.

### INTRODUCTION

This is an adversary proceeding to determine the dischargeability of a debt arising

from a pre-petition California state court judgment in favor of the plaintiffs ("Campbell") against the debtor for intentional fraud. This court has jurisdiction to hear this matter pursuant to 28 U.S.C. and § 1334 and § 157(b)(1). This is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(I).

Campbell has brought a motion for summary judgment, contending that the finding by the state court sufficiently satisfies the requirements of 11 U.S.C. § 523(a)(2), thereby precluding litigation of the fraud issue and allowing this court to declare the debt nondischargeable as a matter of law. The debtor's response asserts that the doctrine of collateral estoppel, or issue preclusion, is not applicable to § 523 dischargeability proceedings, thereby requiring the issue of fraud to be relitigated in bankruptcy court.

## II.

### FACTS

Following a bench trial, the California superior court judge ordered the rescission of a transaction to sell a motor vehicle salvage and rebuilding business between debtor ("seller") and Campbell ("buyer") and also assessed damages against the debtor for intentional fraud in the inducement of the transaction. Campbell was awarded the following amounts: Compensatory damages of $181,291.13; exemplary damages of $99,393.13; attorneys' fees of $16,311.60; and $3,225.00 in expert witness fees. Upon request for an additional Statement of Decision, the trial judge stated the following findings of fact:

1. That in 1982 Defendant offered to sell his business and represented in a "Sales Brochure" that during 1981 the business grossed $581,117.00 and netted $142,727.00.

2. That Plaintiffs agreed to buy the business and the parties entered into an escrow.

3. That Plaintiffs exercised their right to examine the books and records of the Defendants and engaged an accountant to examine the books and records to the extent that they were available, including an income tax return. The accountant reported that there were incomplete and insufficient books and records upon which to substantiate the seller's representations and that he could not render an opinion on the subject, positive or negative.

4. That Plaintiffs were nevertheless willing to proceed with the purchase if the seller expressly warranted in writing that the gross volume and net profit were as represented in the "brochure" and for said purpose the parties executed an amendment to the escrow instructions which provided: "Seller warrants to the buyer herein that the complete brochure ... is true and correct to the best of seller's knowledge and that seller understands that the brochure is a material inducement to the buyer to entering into this purchase." (Hereinafter referred to as warranty.)

5. That Plaintiffs relied upon the warranty as a material inducement to the Plaintiffs to enter into the purchase agreement.

6. That the sale was consummated and Plaintiffs paid the purchase price of the business, partly in cash and partly by a Note secured by a Deed of Trust on real property and partly by a Note secured by a Security Agreement on Personal Property.

7. That Plaintiffs commenced operation of the business in a manner substantially the same as that employed by the defendant and that Plaintiffs instituted a highly improved bookkeeping and accounting system in accordance with standard and accepted business practices.

8. That after several months of operation the Plaintiffs discovered that the business generated no net profit and gave, in a timely fashion, notice of rescission to Defendant followed by the instant action for rescission and cancellation and fraud.

9. That prior to trial a second accountant was engaged by Plaintiffs to examine the Defendant's books and records. That accountant concluded that

the gross volume of business was substantially overstated (a) by duplicate deposits of the two bank accounts maintained by defendant; (b) by transfer of funds from one account to another; and (c) by deposit of funds from unexplained sources. The accountant's conclusion substantiated the Plaintiff's conclusion that there was no net profit and that Defendant's representations in the "brochure" were untrue and were false.

10. That at the time the Defendant, as seller, made the above referred to "warranty" with the intent to induce Plaintiffs and to deceive Plaintiffs into entering into and completing the sales contract as provided in the escrow instructions, the Defendant knew that and did not believe to be true that the business had grossed $581,117.00 or netted $142,727.00 during the year of 1981; and further, that defendant made said warranty, including those statements relating to the 1981 gross and net of said business in a manner not warranted by the information available to and known to the defendant and said warranty was not true, and Defendant made said statements with knowledge of the falsity, or said statements were made with such disregard and recklessness that knowledge is inferred, and Defendant made the statements of the gross and net income of the business for the year 1981 which was not true when he had no reasonable grounds for believing it to be true.

11. That Defendant has been guilty of fraud in inducing Plaintiffs to enter into said contract and in addition to the actual damages suffered by plaintiffs, they may recover damages for the sake of example and by way of punishment of the Defendant.

The trial court did not indicate the standard of proof which was applied in its determinations of fact. Upon appeal to the Fourth District California Court of Appeals, the debtor attacked the factual findings on the grounds that they were not supported by substantial evidence. Affirming the judgment of the lower court, in a published opinion, the Appellate Court concluded that the evidence amply supported the findings of intentional fraud and reliance, but did not analyze the standard of proof applied by the trial judge.

Before Campbell could collect any portion of the judgment, the debtor filed his petition for relief under Chapter 11 of the Bankruptcy Code on April 23, 1985. On June 7, 1985, Campbell initiated the present adversary case, by filing a complaint to determine the dischargeability of the debt pursuant to 11 U.S.C. § 523(a)(2) or (4). Campbell's instant motion for summary judgment is based upon § 523(a)(2).

## III.

## DISCUSSION

The primary matter for consideration is whether the doctrine of collateral estoppel should be applied by this court to grant preclusive effect to those issues, actually litigated and decided in the protracted state court action, which are relevant to this court's dischargeability determination.[1] The doctrine is supported by important policy considerations including, encouraging reliance on judicial decisions, promoting finality of litigation, and considerations of judicial economy. There is no question that careful use of collateral estoppel can help free judicial resources for the resolutions of other disputes. *See, Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *Ferriell, The Preclusive Effect of State Court Decisions in Bankruptcy* (First Installment) 58 Am.Bankr.L.J. 349 (Fall 1984).

1. The doctrine of collateral estoppel, also known as issue preclusion, provides that a question of fact which is distinctly put in issue and directly determined as a ground for recovery by a court of competent jurisdiction cannot be disputed in a subsequent action between the same parties, even if the subsequent suit is on a different cause of action. 21 Fed.Proc.L.Ed. § 51:212 (1984).

In 1970, Congress amended the Bankruptcy Act, then in effect, to grant exclusive jurisdiction to the bankruptcy courts to determine the dischargeability of debts under the predecessors to what is now 11 U.S.C. §§ 523(a)(2), (4) and (6).[2] One purpose of having exclusive jurisdiction was to ensure the consistency of application of federal law that would be obtained by having judges with expertise in bankruptcy pass on questions of dischargeability. Another reason for the change was to further the bankruptcy "fresh start" policy by protecting debtors against harassing law suits initiated by creditors after bankruptcy to determine dischargeability and perhaps obtain an unwitting waiver of a debtor's discharge. H.R.Rep. No. 1502, 91st Cong., 2d Sess. 1–2 (1970) *reprinted in* 1970 U.S. Code Cong. & Admin.News 4156, 4163. This grant of exclusive jurisdiction has created sizeable difficulties for bankruptcy courts whenever a party attempts to establish prior determinations of fact to preclude litigation of issues important to dischargeability. *Ferriell, The Preclusive Effect of State Court Decisions in Bankruptcy* (Second Installment) 59 Am.Bankr.L.J. 1, 59 (Winter 1985).

In *Brown v. Felsen, supra,* the Supreme Court held the grant of exclusive jurisdiction prohibited bankruptcy courts from applying the doctrine of *res judicata* when considering the effect of state court judgments in dischargeability cases. *Id.,* 442 U.S. at 138–139, 99 S.Ct. at 2212–2213. The court reserved the question of whether the narrower principal of collateral estoppel could be applied to preclude litigation of issues actually and necessarily decided in a prior state court suit. However, in a footnote, the court alluded that collateral estoppel could be applied in a proper factual situation, stating: If, in the course of adjudicating a state law question, a state court

should determine factual issues *using standards identical* to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court. (Emphasis added) *Brown v. Felsen, supra* at 139 n. 10, 99 S.Ct. at 2213 n. 10.

The Supreme Court's recognition that both the state and bankruptcy courts need to use identical standards in determining reciprocal factual issues, pinpoints the principal obstacle to applying collateral estoppel in § 523 dischargeability proceedings. In actions for fraud, the standards applied in state court may substantially deviate from those applied in the bankruptcy court to determine mutual issues. *In re DiNoto,* 46 B.R. 489, 491 (9th Cir. BAP 1984). This dichotomy is readily apparent in California where the standard of proof for a state court fact finder is by a preponderence of the evidence,[3] as opposed to a federal bankruptcy court where the law is well settled that each element of fraud must be proven by clear and convincing evidence *In re Black,* 787 F.2d 503, 506 (10th Cir.1986); *In re Hunter,* 780 F.2d 1577, 1579 (11th Cir.1986); *In re Bogstad,* 779 F.2d 370, 372 (7th Cir.1985); *In re Furimsky,* 40 B.R. 350, 353 (Bankr.D.Ariz. 1984).

The creditor's burden of a heightened standard of proof implements one of the fundamental congressional objectives behind the bankruptcy laws, in providing debtors a new opportunity in life and a clean slate for future efforts, unhampered by the inherent pressure and discouragement of insolvency. *See, Perez v. Campbell,* 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233 (1971); *In re Brown,* 55 B.R. 999, 1002 (Bankr.E.D.N.Y.1986); *In re Huff,* 1 B.R. 354, 357 (Bankr.D.Utah 1979). Indeed, the Supreme Court has ex-

---

**2.** Section 523(a)(2), (4) and (6) contains the current versions of § 17(a)(2), (4) and (8) of the Bankruptcy Act of 1898. The substance of the two versions is essentially the same. *In re Moultrie,* 51 B.R. 368 (Bankr.W.D.Wash.1985).

**3.** In *Liodas v. Sahadi,* (1977) 19 Cal.3d 278, 562 P.2d 316, 137 Cal.Rptr. 635, the California Supreme Court held that the burden of proof standard for a cause of action for fraud in a civil case is that of proof by a preponderance of the evidence and not that of clear and convincing proof. In so holding, the *Liodas* court settled the different views on this issue between several California Court of Appeal decisions.

pressly recognized that freedom from most kinds of preexisting tort judgments is part of a debtor's new opportunity. *Perez v. Campbell, supra,* 402 U.S. at 648, 91 S.Ct. at 1710. Consequently, in ruling upon a creditor's motion for summary judgment, a bankruptcy court may not consider state court findings of fact as dispositive of identical issues unless those findings were proven by clear and convincing evidence.

■ Where the elements of fraud and the standards to be applied are similar in both courts, this court is of the impression that collateral estoppel *could* be applied by the bankruptcy judge as to those reciprocal issues. What prohibits this court from declaring a more emphatic conclusion is the following dicta from *In re Houtman,* 568 F.2d 651, 653 (9th Cir.1978): "As we read those [1970] Amendments there is no room for the application of the technical doctrine of collateral estoppel in determining the non-dischargeability of debts described in [§ 523(a)(2), (4) and (6) ]."

At least one bankruptcy court subject to Ninth Circuit authority has literally read the above quoted passage from *Houtman* as unequivocally barring the application of collateral estoppel in dischargeability cases. *In re Moultrie,* 51 B.R. 368, 373 (Bankr.W. D.Wash.1985). However, other courts have interpreted *Houtman* as "softening" the doctrine of collateral estoppel, rather than forbidding its application. *See, In re Maggi,* 57 B.R. 446, 448 (Bankr.D.Or.1985); *In re Farley,* 15 B.R. 11, 13 (Bankr.D.Or. 1981); *In re Manitta,* 1 B.R. 393 (Bankr.C. D.Cal.1979). This latter view makes a distinction between "mandatory" and "elective" collateral estoppel, whereby the bankruptcy judge has the discretion on whether to preclude relitigation of mutual issues. If a judge decides that the issues before the court were properly decided in the state court action by the appropriate standards, then the prior determinations can be utilized as a valuable, time-efficient resource. This elective approach to collat-

eral estoppel enables the important policies behind preclusion, such as judicial economy, to be satisfied concurrently with the application of exclusive jurisdiction.

The debtor in *In re Maggi, supra,* had plead guilty to a charge of federal securities fraud.[4] In bankruptcy court, the creditors moved for summary judgment pursuant to 11 U.S.C. § 523(a)(2)(A) on the basis of the criminal conviction. The court stated: The affidavits and records supporting the motion for summary judgment establish sufficient identity of issues, identity of necessary judicial determinations and identity of standards between the prior criminal case and the present case to establish that there is no genuine issue of fact under either the *Houtman* or *Brown* rule to require a trial. *Id.* at 448.

*In re Farley, supra,* concerned a state court judgment based upon a jury determination against the debtor awarding compensatory and punitive damages on two of the three causes of action which charged breach of contract and violation of Oregon's Unfair Trade Practices Act, respectively. The jury found in favor of debtor on the remaining count which charged common law fraud. *Id.* at 12. In finding the debtor was entitled to summary judgment on the determination of dischargeability, the bankruptcy court stated:

> The issues framed by the pleadings in this court are identical to the issues in the state court fraud count which the state court submitted to the jury and which the jury determined in defendant's favor. In addition, there is no significant difference between the legal standards the state court instructed the jury to follow and the legal standards governing dischargeability under 11 U.S.C. § 523(a)(2)(A). *Id.* at 13.

A close analysis of the holding by the Ninth Circuit in *In re Houtman, supra,* does not render the *Maggi* and *Farley* decisions as inconsistent. In *Houtman* the appellant (debtor) alleged that the bankruptcy judge assumed he was *bound* by

---

4. Federal courts may not enter a judgment on a guilty plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

the prior state court finding of fraud to find the debt nondischargeable. The Ninth Circuit stated that it would be error for the bankruptcy judge to consider himself *compelled* to apply collateral estoppel, because of the congressional grant of exclusive jurisdiction in dischargeability proceedings. *Id.* at 653. Thus, the court was considering *mandatory* collateral estoppel when it stated that the doctrine was inapplicable in determining dischargeability.

■ The troublesome semantics of the phrase "collateral estoppel" (i.e., whether the doctrine is mandatory or elective) is responsible for the inconsistent approach among bankruptcy courts in the Ninth Circuit regarding the effect of state court findings of fact in dischargeability proceedings. The Ninth Circuit Court has not elaborated on its position in *Houtman* concerning the application of collateral estoppel.[5] However, in *In re Comer*, 723 F.2d 737 (9th Cir.1984) the court stated: The *main concern* of both the Supreme Court in *Brown* and of this court in *Houtman* was to preserve the exclusive jurisdiction of the bankruptcy court to determine dischargeability. (Emphasis added) *Id.* at 740. Therefore, as long as the bankruptcy judge makes an independent determination regarding dischargeability, the findings of another court may be utilized in reaching a decision. Giving the bankruptcy judge *discretion* to apply collateral estoppel preserves the exclusive jurisdiction while yet allowing considerations of judicial economy to be applied. Accordingly, this court believes that a discretionary application of collateral estoppel is permissible where the issues before the court were properly decided in the state court action by the appropriate standards.

## IV.

### CONCLUSION

■ This court has been provided with no evidence, nor does it appear from the submitted documents, that the state court's findings of facts were established by the standard of clear and convincing evidence. Therefore, the doctrine of collateral estoppel is inapplicable.

The Ninth Circuit had established the practice whereby a state court judgment based on fraud is sufficient to establish a *prima facie* case that the judgment represents a nondischargeable debt. *In re Houtman*, 568 F.2d 651, 655 (9th Cir.1978). A debtor is entitled to rebut this presumption of fraud, but failure to raise ample contrary evidence will enable the bankruptcy judge to declare the debt non-dischargeable on the basis of the state court findings. *Id.* at 655.

■ In the case at bar the facts supporting the state court judgment of fraud appear sufficient to satisfy the requirements of either 11 U.S.C. § 523(a)(2)(A) or (B). However, the debtor's declaration in opposition to Campbell's motion for summary judgment puts in issue whether the fraud found by the state court was proven by clear and convincing evidence. Therefore, Campbell's motion for summary judgment is hereby denied, and the debtor is entitled to appear before this court to rebut the presumption of fraud.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. Counsel for debtor shall prepare an Order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.

---

**5.** Although quoting the troublesome dicta from *Houtman,* the decision of *In re Daley,* 776 F.2d 834 (9th Cir.1985), did not resolve the collateral estoppel issue. In *In re Daley, supra,* the fraud claims were not actually litigated in the earlier action, but were dismissed per stipulation. The Ninth Circuit, after implying that collateral estoppel could be technically applied in a proper case, correctly determined that the documents before the bankruptcy judge were inadequate to permit the application of the doctrine. *Id.* at 838, 839.