In re George P. DELUCA, Debtor.

Vincent PETRUZZI, Plaintiff,

v.

George P. DELUCA; and Robert P. Mosier, Trustee, Defendants.

Bankruptcy No. SA89–02944JW.
Adv. No. SA89–0769JW.

United States Bankruptcy Court,
C.D. California.

Feb. 23, 1990.

Bradley J. Pizer, Pizer & Michaelson, Inc., Santa Ana, Cal., for plaintiff.

Lyle J. Robertson, Mission Viejo, Cal., for defendants.

## MEMORANDUM OF DECISION

JOHN J. WILSON, Bankruptcy Judge.

This matter comes before the court on the summary judgment motion of Vincent Petruzzi ("Plaintiff"), who is seeking to hold nondischargable the debt owed to him by George DeLuca ("Debtor"), pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(4). This court has jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## PROCEDURAL BACKGROUND

Plaintiff filed suit in the Superior Court of the County of Orange against the debtor and others seeking damages for fraud and other causes of actions. After a three day trial in which the debtor was represented by counsel, the trial court made oral findings of fact and conclusions of law and entered judgment in favor of plaintiff for $34,924.66 general damages and $35,000 in punitive damages. (Appendix A). The debtor appealed from that portion of the judgment awarding punitive damages, arguing in part that the trial court erred in granting punitive damages because plaintiff did not prove fraud by clear and convincing evidence. After reviewing the entire record of the trial the District Court of Appeal issued a lengthy opinion in which it set out all the relevant facts upon which it affirmed the trial court. Portions of the trial transcript are incorporated herein as Appendix B and the opinion is incorporated herein as Appendix C. The court has taken judicial notice of each document and the adjudicative facts contained therein.

The transactions which gave rise to plaintiff's claims began when De Luca (debtor), as a general partner of Saddleback Funding Company, a consumer finance lender, entered into an oral agreement with Petruzzi (plaintiff) which provided for plaintiff to loan money to Saddleback on a continuing basis. On October 27, 1982, plaintiff agreed to loan Saddleback $38,030.14 to fund a loan to Jun and Rachael Harai. The debtor instructed Security Pacific National Bank to prepare a document authorizing the transfer of the money from plaintiff's account to Escrow Encounters and the plaintiff signed the authorization.

The plaintiff was told he would receive monthly payments of $640 but was given only a cursory explanation of when the loan would be repaid and the expected return on his investment. There was to be no transfer of the Harai obligation without the plaintiff's consent. The debtor made five payments to the plaintiff, but without the plaintiff's knowledge or consent, the debtor assigned the Harai note and deed of trust to Avco Financial Services. The debt-

or used the proceeds from the assignment to fund a separate loan to Dave and Juanita Pelz. As a condition of this loan, the Pelzes executed a grant deed transferring their residence to the debtor. The deed was to be recorded only if the Pelzes defaulted on the loan. After the Pelz agreement was executed, the debtor told the plaintiff the Harai note and deed of trust had been assigned and the proceeds put into the Pelz property. He also told the plaintiff he could expect to be repaid as the Pelz loan was repaid or when the property was sold.

Some time later the Pelzes defaulted and the debtor recorded the deed. The debtor sold the property and told the realtor to keep all details of the sale confidential. The plaintiff was not repaid from the sale of the property nor did the debtor tell the plaintiff that the Pelzes had defaulted. Instead, he gave the plaintiff $400, stating it was interest from the loan and that the principal would be repaid later.

After plaintiff discovered the subterfuge, he filed suit in Superior Court for fraud, breach of fiduciary duty and other causes of action. As noted above, the Superior Court gave judgment to the plaintiff awarding $34,924.66 compensatory damages, and, after finding that the "defendant has been guilty of fraud," the court awarded $35,000 punitive damages. The debtor appealed the judgment for punitive damages and the District Court of Appeal affirmed.

The debtor filed a chapter 7 petition and the plaintiff filed a complaint seeking a determination that the state court judgment including the punitive damages was nondischargable under section 523(a)(2)(A) and (a)(4). After debtor answered denying the allegations, plaintiff filed a summary judgment motion which included a portion of the transcript of the Superior Court action which set out the court's findings of fact and conclusions of law, and the opinion of the District Court of Appeal. Plaintiff asks this court to give collateral estoppel effect to the findings of fact reflected in the Superior Court's transcript and the opinion of the District Court of Appeal. In

his opposition, the debtor asserts that collateral estoppel is not appropriate, claiming that the trial court found fraud by a preponderance of the evidence, not the clear and convincing evidence standard necessary to find a debt nondischargable for fraud under the Bankruptcy Code. In addition, defendant asserts that there are material facts concerning the Pelz transaction which were not brought out in the state court proceeding.[1]

## DISCUSSION

The primary issue raised by the Motion for Summary Judgment is whether, after viewing all evidence and factual inferences in the light most favorable to the non-moving party, there are no genuine issues of material fact and that the moving party is entitled to prevail as a matter of law. *Heiniger v. City of Phoenix*, 625 F.2d 842 (9th Cir.1980); Fed.R.Civ.P. 56; Bankr.R. 7056. This court, in making its independent determination as to the dischargability of the debt owed to plaintiff, examines all relevant evidence, and this includes the findings of fact of the trial court in the Superior Court action and the adjudicative facts reflected in the opinion of the District Court of Appeal.

 It is clear that the bankruptcy court may not give res judicata effect to the judgment of the state court, *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), because the bankruptcy court has exclusive jurisdiction to determine the dischargability of a debt. However, in making its independent determination the bankruptcy court may exercise its discretion by giving collateral estoppel effect to the findings of another court if it decides that the issues before the court were properly decided in the state court action by the appropriate standards. By applying this elective standard the bankruptcy court may give effect to the policy of judicial economy while preserving for the bankruptcy court the exclusive jurisdiction to determine nondischargability of debts.

 The issues raised in this adversary proceeding are identical to those already tried in the state court. The transactions upon which the state court found fraud are the same transactions upon which the plaintiff relies in this adversary proceeding. After a trial on the merits during which the debtor was represented by counsel, the state court made appropriate findings of fact and granted judgment for the plaintiff based on the debtor's fraudulent conduct. The trial court found that the plaintiff was "in a position of superior knowledge, training, skill and education," (Appendix B, Reporter's transcript (RT) page 844); that the plaintiff gave the debtor a considerable amount of money and the debtor failed to account for it, (Appendix B, RT page 844); and that the debtor used the funds without approval of the plaintiff. (Appendix B, RT page 844). Obviously, the trial court considered the debtor's conduct so egregious that it awarded punitive damages in addition to compensatory damages.

The debtor appealed the judgment, apparently seeking only to set aside the award of punitive damages by arguing that the trial court applied a lessor standard of proof than was required under state law. The District Court of Appeal examined the entire record of the trial and made an independent determination that fraud had been found by clear and convincing evidence, stating that "Nothing in the record, however, suggests the Court used a preponderance of evidence standard in finding fraud." (Appendix C, p. 847). It affirmed the judgment including the punitive damages. This court is satisfied that the Superior Court and the District Court of Appeal applied the same clear and convincing standard to the evidence that this court would apply if the case is retried here. Accordingly, collateral estoppel effect will be given to those essential findings of fact upon which the state court judgment rests.

The debtor seeks to raise an issue as to whether the state court applied the clear and convincing evidence standard to reach

1. The state court judgment in that action has become final and the debtor may not at this late date seek to introduce evidence that was available at the earlier trial.

its determination of fraud. In this regard the case is strikingly similar to *In re McClure*, 70 B.R. 955 (Bankr.S.D.Cal.1987). In *McClure* the debtor suffered a judgment for fraud in the state court including punitive damages and the judgment was affirmed on appeal. After deciding that the bankruptcy court could, in an appropriate case, give collateral estoppel effect to state court findings, Judge Hargrove determined that the debtor by its motion for summary judgment, had raised a triable issue, namely: "whether the fraud found by the state court was proven by clear and convincing evidence." *Id.* at 961. Accordingly, Judge Hargrove denied the motion for summary judgment.

Unlike *McClure* where the District Court of Appeal "did not analyze the standard of proof applied by the trial judge," *Id.* at 958, the District Court of Appeal reviewing this plaintiff's judgment examined at great length the standard of proof applied by the trial judge as that was the primary issue on which the debtor appealed. The District Court of Appeal considered and rejected the identical argument now urged by the debtor in opposition to the motion for summary judgment and this court sees no reason to disregard the prior determination by the District Court of Appeal. Accordingly, this court elects to give preclusive effect to the findings of the state courts where the debtor has unsuccessfully sought to defeat plaintiff's claims. *In re Tilbury*, 74 B.R. 73 (Bankr. 9th Cir. BAP 1987).

■ The remaining issue is whether the punitive damages assessed by the state court are non-dischargable under 11 U.S. Code section 523(a)(2) and (a)(4). The 9th Circuit Bankruptcy Appellate Panel has recently addressed this issue and determined that a wholly private penalty cannot be the basis for a non-dischargability judgment. *In Re Ellwanger*, 105 B.R. 551 (Bankr. 9th Cir.1989). The BAP's holding that exceptions to discharge under section 523(a)(2) are limited to compensatory damages is consistent with other cases. See *In re Larson*, 79 B.R. 462, 465 (Bankr.W.D.Mo. 1987); *In re McDonald*, 73 B.R. 877, 882 (Bankr.N.D.Tex.1987); *In re Wilson*, 72 B.R. 956, 959–60 (Bankr.M.D.Fla.1987); *In re Brown*, 66 B.R. 13, 16 (Bankr.D.Utah 1986); *In re Suter*, 59 B.R. 944, 946–47 (Bankr.N.D.Ill.1986); *In re Schmidt*, 36 B.R. 834, 836–37 (Bankr.D.Minn.1984); cf. *In re Barr*, 54 B.R. 922, 925–26 (D.Or.1984).

Congress has determined that certain non-compensatory debts are not dischargable but has limited this exception to certain debts owed to governmental units. 11 U.S.C. section 523(a)(7). This section provides that certain debts owed to a governmental unit for a fine, penalty, or forfeiture are not dischargable. Having limited the exception for non-compensatory damages to governmental units there is no compelling reason to expand this exception to punitive damage claims by private parties.

As the BAP observed in *Ellwanger* "section 523(a)(2) as an exception to discharge impairs the debtor's fresh start and should be read no more broadly than necessary to effectuate the policy against debtors avoiding debts incurred as a result of their actual fraud." 105 B.R. at 556. The fact that plaintiff also sought a determination of non-dischargability under section 523(a)(4) does not dictate a different result.

It is clear that the issues before the trial court and the District Court of Appeal were identical to those that would be before this court if the case proceeded to trial; that those issues were actually litigated in the non-bankruptcy action; that the issues were determined by a valid and final judgment of the Superior Court and the District Court of Appeal; and the determination was essential to the final judgment. *Matter of Suter*, 59 B.R. 944 (Bankr.N.D.Ill.1986). Likewise, punitive Bankruptcy Code and should be read no more broadly than to implement section 523(a)(2)(a). *Id.* at 947.

## CONCLUSION

Plaintiff's motion for summary judgment is granted in part and denied in part. Plaintiff shall have judgment against the debtor in the sum of $34,924.66 plus interest at the rate of 19% from January 28, 1983 to January 21, 1988; at 10% from January 21, 1988 to the date on which this judgment is entered, and 7.9% thereafter until paid, which judgment is nondischarga-

ble. The judgment of the state court in the sum of $35,000 for punitive damages is discharged. Each party shall bear his own costs.

This Memorandum of Decision contains the Court's findings of fact and conclusions of law. Counsel for plaintiff shall prepare, lodge and serve, a separate judgment.

## APPENDIX A

Superior Court of the State of California

for the County of Orange

Case No. 42 03 20

Vincent Petruzzi, Plaintiff,

v.

Saddleback Funding Co., A General Partnership; George P. De Luca; Sylvia J. De Luca, Defendants.

George P. De Luca, Cross–Complainant,

v.

Vincent Petruzzi, Cross–Defendant.

## JUDGMENT

This matter having been assigned to Department 12 for trial on January 12, 1988, the Honorable John C. Woolley, Judge Presiding, GLASSER AND SMITH by ROBERT GLASSER appearing for Plaintiff and Cross–Defendant, VINCENT PETRUZZI, and LYLE J. ROBERTSON appearing for all Defendants, SADDLEBACK FUNDING COMPANY, GEORGE P. DE LUCA and SYLVIA J. DE LUCA and Cross–Complainant GEORGE P. DE LUCA.

The parties waived trial by jury and after witnesses of the parties were sworn and examined and documents received in evidence the court expressed its statement of decision in open court and ordered, decreed and adjudged as follows:

1. On the First, Second and Third Causes of Action of Plaintiff's complaint, Plaintiff is awarded the sum of $34,924.66 together with interest from January 28, 1983 at the rate of 19% per annum from Defendants SADDLEBACK FUNDING COMPANY, GEORGE P. DE LUCA, and SYLVIA J. DE LUCA;

2. On the Fourth, Fifth, Sixth, Seventh and Ninth Causes of Action of Plaintiff's complaint Plaintiff is awarded the sum of $35,000.00 as and for punitive damages as against Defendant GEORGE P. DE LUCA;

3. The Eighth Cause of Action of Plaintiff's complaint is dismissed;

4. On the First Cause of Action of the Cross–Complaint, Cross–Complainant is awarded the sum of $3,000.00 plus interest from May 5, 1983 at the rate of 19% per annum;

5. The Fourth and Fifth Causes of Action in the Cross–Complaint are dismissed; and

6. Costs are awarded Plaintiff; and attorney's fees and costs are denied to Cross–Complainant.

DATED: Jan. 21 1988

(s) JOHN C. WOOLLEY

JOHN C. WOOLLEY, JUDGE OF THE SUPERIOR COURT

## APPENDIX B

Superior Court of the State of California

for the County of Orange

Department 12

No. 42 03 20

G006533

Vincent Petruzzi, Plaintiff,

vs.

Saddleback Funding Company, George & Sylvia De Luca, Defendants.

Honorable JOHN C. WOOLLEY, Judge Presiding

*REPORTER'S TRANSCRIPT*

January 14, 1988

WITH RESPECT TO THE THREE THOUSAND DOLLARS INDICATED IN A NOTE APRIL 5, 1983, MR. PETRUZZI EXPLAINED THAT THE MONEY WAS ACTUALLY FOR MR. KIRKLAND. THAT MR. PETRUZZI WAS TOLD HE HAD TO SIGN THE NOTE IN ORDER TO MAKE THE RECORDS, WHAT HAVE YOU. AGAIN FOR IRS PURPOSES, COMPLETE FOR MR. DE LUCA'S RECORDS. NOT THAT HE OWED THE MONEY, THOUGH HE ADMITTED TO SIGNING THE PAPER, DENIED OWING THE MONEY.

WITH THAT, I WOULD SUBMIT.

THE COURT: MATTER SUBMITTED TO THE COURT FOR RULING?

MR. GLASSER: YES, YOUR HONOR.

MR. ROBERTSON: YES, YOUR HONOR. YOUR HONOR—

THE COURT: YES.

MR. ROBERTSON: BEFORE SUBMITTING THE MATTER, I WOULD LIKE TO REQUEST A STATEMENT OF DECISION IN THE CASE.

THE COURT: I WILL GIVE IT TO YOU ORALLY, SIR. SO YOU MAY WANT TO TAKE COPIOUS NOTES.

MR. ROBERTSON: I HAVE A CLEAN SHEET.

THE COURT: MAY I SEE EXHIBITS 3 AND 4, PLEASE? MAY I HAVE ALL THE EXHIBITS? I WILL JUST TAKE ALL THE EXHIBITS.

IN MAKING IT'S RULING, THE COURT HAS REVIEWED THE EVIDENCE AND CONSIDERED THE ARGUMENTS OF THE ATTORNEYS IN THIS MATTER.

IN MAKING IT'S RULING, THE COURT RELIES ON AND INCORPORATES AS PART OF THE STATEMENT OF DECISION THE COURT CHART WHICH IS BEHIND THE COURT AND HAS BEEN DISPLAYED ON BUTCHER PAPER FOR THE PLAINTIFF AND THE DEFENDANT AND THEIR ATTORNEYS TO SEE.

BASICALLY, THIS IS A CASE OF CREDIBILITY. IN WEIGHING THE TESTIMONY OF PARTIES AND WITNESSES, THIS COURT DOES RELY ON EVIDENCE CODE 412 AS CITED BY THE DEFENSE ATTORNEY.

THIS COURT IS STRUCK BY THE FACT AND FINDS THAT THE PLAINTIFF IS OF LIMITED AND SIMPLE EDUCATION. AND DID, IN FACT, SUFFER A PREVIOUS HEAD INJURY WHICH DOES, IN FACT, AFFECT HIS ABILITY TO HEAR.

AND THE FACT THAT THE DEFENDANT WAS A VICE PRESIDENT FOR A VERY SUCCESSFUL INDEPENDENT BANK, IS AND WAS A LICENSED REAL ESTATE BROKER, LICENSED COMMISSION LOAN BROKER AND LICENSED PERSONAL PROPERTY BROKER, ALL BY WAY OF ILLUSTRATION THAT DEFENDANT IS IN A POSITION OF SUPERIOR KNOWLEDGE, TRAINING, SKILL AND EDUCATION.

IN ADDITION, IN MAKING THE COURT'S RULING, THE COURT IS STRUCK BY THE FACT THAT THIS DEFENDANT PRODUCED NO DOCUMENTARY EVIDENCE FOR MONEYS WHICH HE ACKNOWLEDGED HE RECEIVED FROM PLAINTIFF. CHOOSING INSTEAD TO ASK THIS COURT TO BELIEVE THAT HE HAS NO RECOLLECTIONS OF THESE TRANSACTIONS.

THE COURT IS SATISFIED THAT PLAINTIFF GAVE THE DEFENDANT A CONSIDERABLE SUM OF MONEY AND THAT THE DEFENDANT FAILED AND REFUSED TO ACCOUNT FOR THAT SUM OF MONEY.

AND THAT, IN FACT, THE DEFENDANT HAS FAILED AND REFUSED TO RETURN TO THE PLAINTIFF THE SUM OF THIRTY–FOUR THOUSAND NINE HUNDRED TWENTY–FOUR DOLLARS AND SIXTY–SIX CENTS. COURT GIVES JUDGMENT TO THE PLAINTIFF IN SAID SUM ON COUNTS 1, 2 AND 3 OF THE COMPLAINT. PLUS INTEREST AT THE RATE OF THE HARAI' LOAN ON SAID SUM FROM JANUARY 28, 1983.

COURT FINDS THE PLAINTIFF DID NOT MEET ITS BURDEN OF PROOF ON THE AMOUNT OF PROFIT WHICH AROSE OUT OF THE THE SALE OF THE PELZ' FORECLOSURE.

THE COURT FINDS THAT THE EVIDENCE SHOWS BY A PREPONDERANCE THAT THE DEFENDANT, ON HIS OWN, USED THE FUNDS FROM THE HARAI' FINANCE PAYOFF, WHATEVER YOU CHOOSE TO CALL IT, IN THE PELZ' TRANSACTION.

THE COURT FINDS THAT THE DEFENDANT HAS BEEN GUILTY OF

FRAUD AND FINDS FOR THE PLAINTIFF ON THE 4TH, 5TH AND 6TH CAUSES OF ACTION, ASSESSES PUNITIVE DAMAGE IN THE SUM OF THIRTY-FIVE THOUSAND DOLLARS.

THE COURT ALSO WILL POINT OUT THAT IN WEIGHING THE CREDIBILITY OF WITNESSES, THE COURT OBSERVES THE DEMEANOR AND THE ATTITUDE OF THE WITNESSES IN TESTIFYING. THIS TRIER OF FACT IS THE ONLY REVIEWER OF THE EVIDENCE THAT HAS HAD THE OPPORTUNITY TO DO THAT AND FINDS THAT THE DEFENDANT DEMONSTRATED A LACK OF CANDOR TO QUESTIONS. THAT SHOULD THE APPELLATE COURT REVIEW THIS TRANSCRIPT, I AM SURE WILL CONCLUDE THAT THE AVERAGE WITNESS WOULD HAVE FOUND OR HAD LITTLE DIFFICULTY IN ANSWERING THE QUESTIONS.

I WILL ASK THAT THE PLAINTIFF'S ATTORNEY PREPARE THE JUDGMENT, SUBMIT IT TO THE COURT. I WILL HOLD THE JUDGMENT FOR FIVE COURT DAYS. IF THERE ARE NO OBJECTIONS, I WILL EXECUTE THE JUDGMENT.

ANYTHING ELSE I CAN ASSIST YOU IN, GENTLEMEN?

COURT IS IN RECESS.

MR. ROBERTSON: YOUR HONOR, MAY I INQUIRE AS TO THE COURT'S DECISION CONCERNING SYLVIA DE LUCA?

THE COURT: I AM SORRY. I FORGOT TO RULE ON THE CROSS-COMPLAINT.

MR. ROBERTSON: YES, YOUR HONOR. I ALSO HAVE A CONCERN OVER THE COURT'S JUDGMENT CONCERNING SYLVIA DE LUCA, A NAMED DEFENDANT IN THIS ACTION.

THE COURT: I FIND THERE IS NO EVIDENCE AGAINST MRS. DE LUCA. HER LIABILITY IS ONLY AS A GENERAL PARTNER IN THE BUSINESS.

MR. ROBERTSON: THANK YOU, YOUR HONOR.

THE COURT: ON THE ISSUE OF THE CROSS-COMPLAINT, THE COURT DOES FIND IN FAVOR OF THE DEFENDANTS ON THE THREE THOUSAND DOLLAR PROMISSORY NOTE AND AWARDS JUDGMENT IN THAT SUM IN FAVOR OF THE DEFENDANT.

ON THE ISSUE OF THE ONE THOUSAND DOLLAR PROMISSORY NOTE, THE COURT FINDS THAT THERE IS A REAL QUESTIONABLE SIGNATURE ON THAT NOTE. A CURSORY COMPARISON OF THE MULTITUDE OF PLAINTIFF'S SIGNATURE EXEMPLARS OF PLAINTIFF'S SIGNATURES ON ORIGINAL DOCUMENTS IN THIS CASE EASILY LEADS ONE TO TO CONCLUDE THAT THAT SIGNATURE IS NOT THAT OF THE PLAINTIFF. PLAINTIFF DENIES THAT THAT IS HIS SIGNATURE.

AND THE COURT HAS USED THAT ALSO IN WEIGHING THE QUESTION OF CREDIBILITY.

ANYTHING ELSE?

MR. GLASSER: TO CLARIFY. FOR CROSS-COMPLAINTANT ON THE THREE THOUSAND DOLLAR NOTE, FOR CROSS-DEFENDANT ON THE ONE THOUSAND DOLLARS NOTE?

THE COURT: CORRECT.

MR. GLASSER: AND WITH RESPECT TO MISS DE LUCA, SO I CAN PREPARE AN ACCURATE JUDGMENT, JUDGMENT RELATIVE TO HER IS ONLY AS TO THE THIRTY-FOUR NINE TWENTY-FOUR SIXTY-SIX WITH INTEREST AS A GENERAL PARTNER BUT NOT AS TO PUNITIVE DAMAGES?

THE COURT: CORRECT.

MR. GLASSER: THANK YOU.

THE COURT: PUNITIVE DAMAGES ARE NOT ASSESSED AGAINST THE PARTNERSHIP, ASSESSED AGAINST THE NAMED INDIVIDUAL.

FINALLY, ON THE ISSUE OF ATTORNEY'S FEES, SINCE THE PROMISSORY NOTE DOES PROVIDE FOR ATTORNEY'S FEES, THE COURT WILL NOT

AWARD ATTORNEY'S FEES TO DE-
FENDANT ON THE THREE THOUSAND
DOLLAR NOTE. CROSS–COMPLAIN-
ANTS.

ANYTHING FURTHER?

MR. GLASSER: NO, YOUR HONOR.

THE COURT: COURT IS IN RECESS.

MR. ROBERTSON: THANK YOU
YOUR HONOR.

(PROCEEDINGS CONCLUDED.)

REPORTER'S CERTIFICATE

STATE OF CALIFORNIA

COUNTY OF ORANGE

I, ESTHER J. HAUSE, C.S.R., DO
HEREBY CERTIFY THAT THE WITHIN
AND FOREGOING PARTIAL TRAN-
SCRIPT CONSISTING OF PAGE 347
THROUGH 352, INCLUSIVE, IN THE
CASE OF VINCENT PETRUZZI, PLAIN-
TIFF, VERSUS SADDLEBACK FUND-
ING COMPANY, ET AL., CASE NUMBER
42 03 20, IS A FULL, TRUE AND COR-
RECT TRANSCRIPT OF MY SHORT-
HAND NOTES THEREOF AND A FULL,
TRUE AND CORRECT STATEMENT OF
THE TESTIMONY AND PROCEEDINGS
HAD IN SAID CAUSE.

DATED: NOVEMBER 20, 1989.

(s) Esther J. Hause CSR 1767
OFFICIAL COURT REPORTER

APPENDIX C

*NOT TO BE PUBLISHED*

In the Court of Appeal of the State
of California

Fourth Appellate District

Division Three

G006533

(Super.Ct. No. 43–03–20)

Vincent Petruzzi, Plaintiff and
Respondent,

v.

George De Luca, Defendant
and Appellant.

APPEAL from a judgment of the Superi-
or Court of Orange County, John C. Wool-
ley, Judge. Affirmed.

Lyle J. Robertson for Defendant and Ap-
pellant.

Glasser and Smith and Robert Glasser
for Plaintiff and Respondent.

## OPINION

Filed July 31, 1989

George De Luca appeals from that por-
tion of a judgment awarding punitive dam-
ages to Vincent Petruzzi. He contends
there is insufficient evidence to support a
finding of fraud and, in any event, punitive
damages are unavailable in a contract ac-
tion.

### I

De Luca, as a general partner of Saddle-
back Funding Company, a consumer fi-
nance lender, entered into an oral agree-
ment with Petruzzi. The agreement pro-
vided for Petruzzi to loan money to Saddle-
back on a continuing basis.

On October 27, 1982, Petruzzi agreed to
loan Saddleback $38,030.14 to fund a loan
to Jun and Rachael Harai. De Luca in-
structed Security Pacific National Bank to
prepare a document authorizing the trans-
fer of the money from Petruzzi's account
to Escrow Encounters. Petruzzi signed
the authorization. Petruzzi was told he
would receive monthly payments of $640
but was given only a cursory explanation
of when the loan would be repaid and the
expected return on his investment. There
was to be no transfer of the Harai obli-
gation without Petruzzi's consent. De
Luca made five payments.

Without Petruzzi's knowledge or authori-
ty, De Luca assigned the Harai note and
deed of trust to Avco Financial Services.
De Luca used the proceeds to fund a sepa-
rate loan to Dave and Juanita Pelz. As a
condition of the loan, the Pelzes executed a
grant deed transferring their residence to
De Luca. The transfer was to be recorded
only in the event the Pelzes defaulted on
the loan.

After the Pelz agreement was executed,
De Luca told Petruzzi the Harai note and

deed of trust had been assigned and the proceeds put into the Pelz property. De Luca told Petruzzi he could expect to be repaid as the Pelz loan was repaid or the property sold.

The Pelzes defaulted and De Luca recorded the deed. De Luca sold the property and informed the realtor to keep all details of the sale confidential. Petruzzi was not repaid from the sale of the property. De Luca did not tell Petruzzi that the Pelzes had defaulted. Instead, he gave Petruzzi $400, stating it was interest from the loan; the principal would be repaid later.

After Petruzzi discovered the subterfuge, he filed a complaint for breach of contract; money had and received; accounting; fraud; negligent misrepresentation; breach of fiduciary duty; conversion; conspiracy; and breach of trust.

The trial court awarded Petruzzi $34,924.66 plus interest against all defendants. After expressly finding DeLuca committed fraud, $35,000 in punitive damages was awarded against him personally.

## II

De Luca insists there was no fraud, contending he informed Petruzzi of the Harai–Pelz transactions; thus, there was no concealment upon which a finding of fraud could rest. He is wrong.

" 'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." (Civ.Code, § 3294, subd. (3).) The trial

court found De Luca acted without Petruzzi's authority when he used the proceeds of the Harai note to fund the Pelz transaction. He concealed the transaction from Petruzzi by continuing to write checks of $640 to Petruzzi for two months after the Harai loan had been assigned.

In addition, when the Pelz property was sold, De Luca requested the realtor keep all details of the sale confidential. And after the Pelz property had been sold, De Luca, nevertheless, gave Petruzzi $400, stating it was interest from the loan and the principal would be repaid at an unspecified date. The loan was never repaid.

While De Luca testified to the contrary on some issues, his credibility was specifically found questionable. We do not reassess credibility. (*Fields v. Riley* (1969) 1 Cal.App.3d 308, 312 [81 Cal.Rptr. 671].) We find no error.

## III

De Luca, citing Civil Code section 3294, subdivision (a), contends even if fraud existed, imposition of punitive damages must rest on clear and convincing evidence. Because the court's ruling was based on a preponderance of the evidence, he argues the award must be reversed.

Nothing in the record, however, suggests the court used a preponderance of evidence standard in finding fraud. The court did state "the evidence shows by a preponderance [DeLuca], on his own, used the funds from the Harai finance payoff." But this is only one of several of the court's evidentiary findings.

Only after evaluating the totality of the circumstances did the court reach its ultimate conclusion that fraud existed.[1] Be-

---

1. The trial court, in its findings, was very definite in its conclusions. The court noted: "Basically, this is a case of credibility. In weighing the testimony of parties and witnesses ... this court is struck by the fact and finds that the plaintiff is of limited and simple education. And did, in fact, suffer a previous head injury which does, in fact, affect his ability to hear. [¶] And the fact that the defendant was a vice president for a very successful independent bank, is and was a licensed real estate broker, licensed commission loan broker and licensed

personal property broker, all by way of illustration that defendant is in a position of superior knowledge, training, skill and education. [¶] In addition, in making the court's ruling, the court is struck by the fact that this defendant produced no documentary evidence for moneys which he acknowledged he received from plaintiff. Choosing instead to ask this court to believe that he has no recollections of these transactions. [¶] The court is satisfied that plaintiff gave the defendant a considerable sum of mon-

cause the record is silent as to the standard of proof the court utilized, we must assume the trial court applied the correct standard. " ' "A judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' [Citation.]" (*People v. Dependable Insurance Co.* (1988) 204 Cal.App.3d 871, 874 [251 Cal.Rptr. 527].)

Moreover, DeLuca failed to object to the court's findings at the time of trial or request a statement of decision clarifying the court's position. " 'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method.... The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver.... Often, however, the explanation is simply that it is *unfair to the trial judge and the adverse party* to take advantage of an error on appeal when it could easily have been corrected at the trial.' [Citations.]" (*Royster v. Montanez* (1982) 134 Cal.App.3d 362, 367 [184 Cal.Rptr. 560].)

## IV

De Luca maintains the trial court erroneously concluded he lacked credibility. He argues the trial court's conclusion was based on erroneous findings of fact. De Luca insists he was an "assistant manager," not a "vice president," as the court stated. He maintains he did not have a "real estate brokers license," as the court concluded.

De Luca, however, did have a personal property broker's license, a consumer finance lender's license, and a commercial lender's license. He admitted he could make loans on real property. The trial court's misstatements do not affect its conclusion De Luca was an experienced consumer lender. "Erroneous or unsupported findings of fact will be disregarded as being harmless error if the judgment as rendered can be sustained on the supported and proper findings made by the trial court. [Citations.]" (*Busch v. Globe Industries* (1962) 200 Cal.App.2d 315, 321 [19 Cal.Rptr. 441].)

De Luca states Petruzzi "admitted" signing a $1,000 promissory note and alleges the court wrongly concluded the note was forged; this mistake improperly reflected on his credibility. The record indicates Petruzzi did not know if he signed a promissory note; he stated, "Don't look like my signature, huh-uh." Alternatively, there was an indication he might have signed the document but did not know what it was. The court, however, found "[a] cursory comparison of the multitude of plaintiff's signature exemplars of plaintiff's signatures on original documents in this case easily leads one to conclude that signature is not that of the plaintiff" and "plaintiff denies that is his signature." In the face of conflicting evidence, the decision was for the trial court.

De Luca also alleges, contrary to the court's conclusion, he did account for the money Petruzzi loaned him. And he contends his inability to produce records should not be weighed in evaluating his credibility. There may have been *some* accounting, but the trial court did not find it satisfactory. The trial court stated it was "struck by the fact that [De Luca] produced no documentary evidence for moneys which he acknowledged he received from the [Petruzzis]. Choosing instead to ask this court to believe that he has no recollection of these transactions." The court was justified in concluding "the aver-

---

ey and that the defendant failed and refused to account for that sum of money."

The court further stated: "The court also will point out that in weighing the credibility of witnesses, the court observes the demeanor and the attitude of the witnesses in testifying. This trier of fact is the only reviewer of the evidence that has had the opportunity to do that and finds that the defendant demonstrated a lack of candor to questions. That should the appellate court review this transcript, I am sure will conclude that the average witness would have found or had little difficulty in answering the questions."

age witness would have found little difficulty in answering" or producing documents of the transactions.

Finally, De Luca contends his "position of superior knowledge, training, skill, and education" standing alone is not a basis for a finding of fraud. As the above discussion indicates, this was only one factor considered in the court's assessment. We find no reversible error.

### V

De Luca, relying on Civil Code section 3294 subdivision (a) and *999 v. C.I.T.* (9th Cir.1985) 776 F.2d 866, claims this action arises in contract; therefore, punitive damages are inappropriate. We disagree.

*Zlotoff v. Tucker* (1984) 154 Cal.App.3d 988 [201 Cal.Rptr. 692] is instructive. Zlotoff sold property to Tucker conditioned on Tucker's agreeing not to sell the land to Cota, to whom Tucker represented he was not related. A liquidated damages section was added to the sales agreement in escrow. After the sale, Tucker sold the land to Cota, Tucker's uncle.

Zlotoff sued for breach of contract and fraudulent false promise. The court awarded contract damages based on the liquidated damages clause as well as punitive damages for Tucker's fraud. "[T]he court found Zlotoff proved his allegations of both breach of contract and fraud. The court properly awarded Zlotoff punitive damages under section 3294 after specifically finding Tucker committed 'rather gross fraud.'" (*Id.*, at p. 994.)

In *Walker v. Signal Companies, Inc.* (1978) 84 Cal.App.3d 982 [149 Cal.Rptr. 119], the court stated, "Although the contract may fix the compensation, it does not prevent recovery of exemplary damages. [Citations.] The application of this rule which permits punitive damages where both fraud [in the inducement] and breach of contract exists is consistent with the underlying policy for the application of punitive damages. [Citation.]" (*Id.*, at p. 996 [149 Cal.Rptr. 119].)

* Judge, Orange County Superior Court, assigned

Here, Petruzzi was awarded punitive damages for actions grounded in tort: a fraudulent promise made without intent to perform, negligent misrepresentation, and breach of trust. We find no error.

Judgment affirmed. Respondent to receive costs.

 s/ SONENSHINE
 SONENSHINE, J.

WE CONCUR:

s/ CROSBY

CROSBY, Acting P.J.

s/ PARSLOW

PARSLOW, J.*

by the Chairperson of the Judicial Council.