HUG, Circuit Judge:
 

 This is an appeal from the district court’s affirmation of an order of the bankruptcy court declaring certain debts nondischargeable. We affirm. This bankruptcy proceeding was instituted prior to October 1, 1979, the effective date of the Bankruptcy Reform Act, and is, therefore, governed by the Bankruptcy Act in force prior to that date.
 
 See
 
 Pub.L. No. 95-598, 92 Stat. 2682, 2683. Our opinion, therefore, relates only to the prior Bankruptcy Act.
 

 Miller had obtained two judgments in state court against Gross in the amounts of $103,000 and $6,500 several years before Gross filed his petition in bankruptcy. Gross listed the judgments as scheduled debts in his bankruptcy petition. Miller instituted a proceeding under section 17(c)(2) of the Bankruptcy Act, 11 U.S.C. § 35(c)(2) to declare the debts nondischargeable, on the grounds that they were debts encompassed within the meaning of section 17(a)(2), 11 U.S.C. § 35(a)(2). That section provides in pertinent part:
 

 A discharge in bankruptcy shall release a bankrupt from all of his
 
 provable debts, . .
 
 . except such as . . . (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money ... in reliance upon a materially false statement in writing respecting his financial condition made or published ... in any manner whatsoever with the intent to deceive .... (emphasis added).
 

 Gross, who contends the debts are dischargeable, first makes the peculiar argument that the debts are not “provable” and thus the bankruptcy court had no jurisdiction under section 17 of the Bankruptcy Act to declare them nondischargeable. The argument is vacuous because the only debts that are dischargeable are provable debts, as section 17(a) clearly states.
 
 See
 
 1A J. Moore & R. Oglebay,
 
 Collier on Bankruptcy
 
 ¶ 17.03, p. 1583 (14th ed. 1978) (any debts which are not provable are not effected by discharge). Thus, had Gross been able to establish his point that the debts were not provable, he would have precluded their discharge.
 

 However, the bankruptcy judge was clearly correct in finding that the debts were provable as judgments pursuant to section 63(a) of the Bankruptcy Act, 11 U.S.C. § 103(a). The amounts of the judgments were certain; the only question was the amount due on the judgments after applying the reasonable value of the stock that had been obtained by the debtor in partial satisfaction of the judgments. This did not affect the provability of the debts, but only their allowability.
 
 See
 
 3A J. Moore & R. Oglebay,
 
 Collier on Bankruptcy
 
 
 *604
 
 ¶ 63.05, p. 1775 (14th ed. 1975) (distinguishing between the two concepts). Gross seeks to obfuscate the difference between “provable” and “allowable.” Debts, such as these judgments, could well be provable under section 63 and thus dischargeable, yet, for many reasons, such as failure of proof, these debts would not be allowed to share in the bankruptcy estate. The effect of this is that if a debt is provable, it is discharged, whether it is allowed as a debt to share in the bankruptcy estate or not, unless it falls within one of the exceptions enumerated in section 17. The issue in this proceeding under section 17 was to determine the dis-chargeability of the debts, not the amount to be allowed. The bankruptcy judge found the debts not to be dischargeable because the loans were induced by false representations. This finding is amply supported by the evidence.
 

 Gross also raises two special defenses. He asserts that the judgments evidences a binding election of remedies because they were sought in the state court on contract grounds only, and that Miller is thus precluded from now raising the question of fraud. However, this assertion is contrary to the Supreme Court’s decision in
 
 Brown v. Felsen,
 
 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), where the Court rejected an election argument, stating that a requirement to consolidate claims in the state court “would undercut a statutory policy in favor of resolving § 17 questions in bankruptcy court, and would force state courts to decide these questions at a stage when they are not directly in issue and neither party has a full incentive to litigate them.” 442 U.S. at 134, 99 S.Ct. at 2211. This was the rule in the Ninth Circuit even prior to
 
 Brown.
 
 When the question was first presented to this court in
 
 In re Houtman,
 
 568 F.2d 651 (9th Cir. 1978), we held that the bankruptcy judge was not limited to the state court record in reaching a dischargeability decision. 568 F.2d at 655;
 
 see
 
 generally,
 
 In re Fulwiler,
 
 624 F.2d 908 (9th Cir. 1980);
 
 Matter of Kasler,
 
 611 F.2d 308 (9th Cir. 1979); 1A J. Moore & R. Oglebay,
 
 Collier on Bankruptcy
 
 ¶ 17.16, p. 1650.1 (14th ed. 1978). It was proper, therefore, for the bankruptcy court to look beyond the state court record to examine the discharge-ability of the debts.
 

 Gross also asserts that Miller is barred by California’s three-year statute of limitations from raising the issue of fraud in the dischargeability action. Miller is not seeking a new money judgment based on fraud; he is litigating the issue of dischargeability under section 17(a)(2) of the Bankruptcy Act, and the timeliness of the petition is governed by the Bankruptcy Rules. The petition was timely filed, and the issue of misrepresentation to preclude discharge under section 17(a)(2) was properly raised.
 

 The judgment is AFFIRMED.