776 F.2d 834
 13 Collier Bankr.Cas.2d 927, Bankr. L. Rep. P 70,853
In re Donald O. DALEY, Debtor.
Walter L. FRANK, individually and as Trustee of the Walter
L. Frank, M.D., Ltd., Employees Pension Plan; and
Joan H. Frank, his wife, Plaintiffs-Appellants,
v.
Donald O. DALEY and Don Daley Enterprises, aka Daley
Enterprises; Patricia L. Daley, his wife, only as
to her marital community with Donald O.
Daley, Defendants-Appellees.
 No. 84-2639.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 10, 1985.
Decided Nov. 13, 1985.
 
 James M. Marlar, Phoenix, Ariz., Stephen R. Kaufmann, Springfield, Ill., for plaintiffs-appellants.
 Lester L. Penterman, Phoenix, Ariz., for defendants-appellees.
 Appeal From the United States District Court for the District of Arizona.
 Before REINHARDT, BEEZER and HALL, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 Creditors in a Chapter 7 bankruptcy proceeding appeal the judgment of the district court affirming the bankruptcy court's dismissal of creditors' adversary claim of nondischargeability. We reverse and remand.
 
 
 2
 * In February of 1981, the appellants, Walter and Joan Frank, filed suit against Donald Daley in United States District Court for the District of Arizona.[1] The complaint alleged twenty-one counts of breach of contract and fraud. In August of 1982, the district court granted summary judgment in favor of the Franks on the breach of contract claims. The Franks were awarded $485,800, plus $28,925 in attorney's fees, $3,664 in costs, and prejudgment interest. A stipulated dismissal was entered with prejudice on the remaining claims, which dealt primarily with fraud.[2]
 
 
 3
 In February of 1983, Daley filed a voluntary petition in bankruptcy under Chapter 7. The Franks filed an adversary complaint against Daley and Daley's wife seeking a declaration that the debt evidenced by the earlier judgment was nondischargeable under Bankruptcy Code, 11 U.S.C. Sec. 523(a)(2), (4), and (6).[3]
 
 
 4
 The Daleys moved to dismiss the adversary complaint on the grounds that the doctrine of judicial estoppel barred relitigation of the fraud claims. The bankruptcy court rendered final judgment in favor of the Daleys.[4] The court held that the Franks' consent to a dismissal with prejudice amounted to a waiver of their right to raise the fraud claims in a bankruptcy proceeding. The court reasoned that the Franks should be bound to the terms of their bargain, which declared with some specificity that the allegations of fraud could not be raised again in court.
 
 
 5
 The Franks appealed to the district court. On appeal, the Daleys abandoned their judicial estoppel argument and argued instead that the doctrine of res judicata barred the Franks' complaint for nondischargeability. The district court affirmed the bankruptcy court. The court held that the dismissal with prejudice of the fraud claims in the earlier action constituted a res judicata bar to assertion of allegations of fraud in a bankruptcy proceeding.
 
 II
 
 6
 We have jurisdiction over this appeal of a final judgment of the district court. 28 U.S.C. Sec. 1291. The district court had jurisdiction pursuant to 28 U.S.C. Secs. 1334, 1471(b) and Local Rule 55 of the United States District Court for the District of Arizona. In re Thomas, 765 F.2d 926, 928-30 (9th Cir.1985).
 
 III
 
 7
 A district court's dismissal on res judicata grounds is subject to de novo review. Hirst v. State of California, 770 F.2d 776, 777 (9th Cir.1985); In re Comer, 723 F.2d 737, 739 (9th Cir.1984). A district court's order for summary judgment is also reviewed de novo. Bunyan v. Camacho, 770 F.2d 773, 774 (9th Cir.1985).
 
 IV
 A. Res Judicata (Claim Preclusion)
 
 8
 The Franks argue that the Supreme Court's decision in Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) requires reversal of the bankruptcy and district courts.
 
 
 9
 Brown involved a guaranteed loan. 442 U.S. at 128, 99 S.Ct. at 2207. Debtor defaulted and the bank brought suit against creditor and debtor in state court. Id. Creditor filed a cross-claim against debtor alleging that debtor induced creditor to guarantee the loan by misrepresentations and nondisclosure of material facts. Id. The suit was settled by stipulation, which provided that the bank should recover jointly and severally against creditor and debtor, and that creditor should have judgment against debtor. Id. Neither the stipulation nor the judgment indicated the legal theory on which debtor's liability to creditor was based. Id. Debtor subsequently filed a voluntary petition in bankruptcy seeking discharge of his indebtedness. Id. Creditor sought to establish that the debt was nondischargeable under sections 17(a)(2) and 17(a)(4) of the Bankruptcy Act. Id. at 129, 99 S.Ct. at 2208.[5] Creditor alleged that the guarantee debt was the product of fraud, deceit, and malicious conversion. Id. Debtor moved for summary judgment on the grounds that res judicata barred relitigation of the nature of defendant's debts to creditor. Id. The bankruptcy court granted the motion. Id. at 130, 99 S.Ct. at 2208. The district court and the Tenth Circuit affirmed. Id. The Supreme Court reversed. Id. at 139, 99 S.Ct. at 2213.
 
 
 10
 The Brown Court rested its decision on a variety of factors that apply with equal vigor to the instant case. The Court noted that application of res judicata in the context of a dischargeability determination is quite unlike res judicata in its usual setting. A creditor in a dischargeability proceeding "readily concedes that the prior decree is binding. That is the cornerstone of his claim. He does not assert a new ground for recovery, nor does he attack the validity of the prior judgment. Rather, what he is attempting to meet here is the new defense of bankruptcy which [the debtor] has interposed between [the creditor] and the sum determined to be due him." 442 U.S. at 133, 99 S.Ct. at 2210. The Franks, similarly, seek only to realize the judgment obtained in the prior proceeding.
 
 
 11
 The Brown Court found that application of res judicata in dischargeability proceedings would inspire needless litigation by forcing "an otherwise unwilling party to try Sec. 17 questions to the hilt in order to protect himself against the mere possibility that a debtor might take bankruptcy in the future." Id. at 135, 99 S.Ct. at 2211. In the instant case, the Franks obtained judgment without going to trial. Since the Franks received contractual relief by summary judgment, they had no incentive to continue the litigation. If the Franks had pursued their fraud claims solely to protect their judgment, all parties would have sustained additional litigation expense. The Bankruptcy Code's policy of preserving debtors' estates is not well served by a rule that encourages needless litigation.
 
 
 12
 The Brown Court also noted that giving finality to prior state court rulings on section 17 questions would undercut Congress' intention to commit section 17 issues to the jurisdiction of the bankruptcy court. Id.
 
 
 13
 The Daleys seek to distinguish Brown by pointing out that in Brown neither the stipulation nor the judgment stated the legal theory upon which the prior judgment was based. The Daleys argue that the dismissal of the fraud claims with prejudice identifies the claim that was decided in the earlier proceeding.
 
 
 14
 Although Brown is distinguishable as the Daleys claim, the distinction is legally irrelevant. The Court in Brown did not rely on the distinction. Other than in its recitation of the facts, the Brown Court did not refer to whether the legal theory in the earlier proceeding was identifiable. Moreover, the Court's opinion suggests that the Court contemplated a hypothetical situation in which the legal theory was known. In discussing the possibility that application of res judicata would encourage needless litigation, the Court stated that "absent a trial on the merits, there is no particular reason to favor extraneous facts thrown into a record for Sec. 17 purposes over facts adduced before the bankruptcy court." 442 U.S. at 135, 99 S.Ct. at 2211. The context of this statement indicates that the "facts thrown into [the] record" are those facts indicating the legal theory upon which debtor's liability was grounded. The statement, therefore, implies that even when the legal theory is apparent from the record, res judicata should not apply. The Daleys' reliance on the distinction between Brown and the instant case is misplaced.
 
 
 15
 The Daleys argue that the Franks' agreement to dismissal with prejudice binds the Franks to the terms of their bargain. The Supreme Court in Brown rejected a similar argument:
 
 
 16
 [Debtor] argues that [creditor] could have avoided such a result and preserved his dischargeability contentions for bankruptcy court review by bargaining for a stipulation that Sec. 17 issues were not resolved by the consent judgment. It makes little sense, however, to resolve a federal dischargeability question according to whether or not the parties in state court waived their right to engage in hypothetical litigation in an inappropriate forum.
 
 
 17
 Id., at 137, 99 S.Ct. 2212.[6] Since the alleged differences between Brown and the instant case are irrelevant, the Supreme Court's decision in Brown requires reversal of the decision below.
 
 
 18
 In In re Gross, 654 F.2d 602 (9th Cir.1981), we rejected arguments similar to those raised by appellees in the instant case. In Gross, the debtor asserted that a prior state court judgment rendered on contract grounds precluded the creditor from raising the question of fraud in a dischargeability proceeding in bankruptcy court. Id. at 604. The debtor contended that the contract judgment evidenced a binding election of remedies. Id. We held that such an assertion was contrary to the Supreme Court's decision in Brown and therefore that the bankruptcy court properly examined evidence beyond the state court record in determining that the debt was not dischargeable. Id.
 
 
 19
 As in the instant case, the theory of liability in Gross was known. The only difference between Gross and the instant case is that in Gross, there was no indication that the parties expressly stipulated to dismiss the fraud claims in the earlier proceedings. This distinction, however, is irrelevant. Simply put, "[t]he doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, '[i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' " Nevada v. United States, 463 U.S. 110, 129-30, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 (1983) (quoting Cromwell v. County of Sac, 94 U.S. (4 Otto) 351, 352, 24 L.Ed. 195 (1877)).
 
 B. Collateral Estoppel (Issue Preclusion)
 
 20
 The Daleys argue that the Franks may not relitigate issues already decided.
 
 
 21
 The Restatement (Second) of Judgments provides:
 
 
 22
 When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or different claim.
 
 
 23
 Restatement (Second) of Judgments Sec. 27 (1982).[7] Comment e to section 27 states that "[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated." Restatement (Second) of Judgments Sec. 27, comment e (1982). Since the dismissal with prejudice was entered pursuant to a stipulation, the fraud claims were not actually litigated. Moreover, since the Franks obtained their prayer for relief in the summary judgment on the contract claims, the "determination" of the fraud claims was not necessary to the judgment. Therefore, collateral estoppel does not apply.
 
 
 24
 Even if collateral estoppel technically applied, the special rules that govern the application of collateral estoppel in determining dischargeability in bankruptcy preclude the use of collateral estoppel in the instant case. In In re Houtman, 568 F.2d 651 (9th Cir.1978), we stated that
 
 
 25
 [t]he 1970 Amendments to the Bankruptcy Act imposed upon the bankruptcy courts the exclusive jurisdiction to determine dischargeability. As we read those Amendments there is no room for the application of the technical doctrine of collateral estoppel in determining the nondischargeability of debts described in section 17(a)(2), (4), and (8) of the Bankruptcy Act. This does not mean that the documents which officially enshrine the state court proceedings may not be considered by the bankruptcy judges as establishing the nondischargeability of a debt. What is required is that the bankruptcy court consider all relevant evidence, including the state court proceedings, that is offered by the parties, or requested by the court, and on the basis of that evidence determine the nondischargeability of judgment debts which the creditors contend are described in section 17(a)(2), (4), and (8).
 
 
 26
 Id. at 653-54 (citations and notes omitted, emphasis added).
 
 
 27
 In the instant case, the Daleys contend that the bankruptcy court examined all of the relevant evidence. The bankruptcy court's written decision cannot be read so broadly. The bankruptcy and district courts rendered purely legal decisions based on their interpretations of Brown. The courts relied solely on the stipulated dismissal with prejudice in the prior district court proceedings. The documents before the bankruptcy court were inadequate to permit it to form an independent judgment regarding dischargeability.[8] Summary judgment, therefore, was inappropriate.
 
 V
 
 28
 Under Sec. 523 of the Bankruptcy Code, the bankruptcy court has the exclusive jurisdiction to determine dischargeability. In re Comer, 723 F.2d at 740; In re Houtman, 568 F.2d at 653. To make this determination, the court must consider all relevant evidence bearing on the nature of the debt. See In re Comer, 723 F.2d at 740. The Franks were entitled to pursue their claims of nondischargeability in bankruptcy court. On remand, the bankruptcy court is directed to consider all relevant evidence and to determine dischargeability on the merits.
 
 
 29
 REVERSED and REMANDED.
 
 
 
 [1]
 The complaint named Daley, his wife, and several business enterprises and corporations
 
 
 [2]
 In addition to dismissing ten counts grounded in fraud, the court dismissed two quasi-contract claims and one claim for indemnity
 
 
 [3]
 The Franks also sought punitive damages, which they expressly waive on appeal
 
 
 [4]
 The district court treated the dismissal as one for summary judgment since affidavits and supporting material were attached. Neither the bankruptcy court nor the district court made findings of fact regarding the substance of the Franks' complaint
 
 
 [5]
 Section 523 of the 1978 Bankruptcy Code is substantially similar to section 17 of the Bankruptcy Act. Brown v. Felsen, 442 U.S. 127, 129 n. 1, 99 S.Ct. 2205, 2208 n. 1, 60 L.Ed.2d 767 (1979). "[N]o reason exists why the rationale of the Brown decision should not be utilized in dealing with cases under Section 523(a)(2), (4), and (6) of the 1978 Bankruptcy Reform Act." In re Eskenazi, 6 B.R. 366, 368 (9th Cir.Bkrtcy.App.1980); accord In re Comer, 723 F.2d 737, 739 (9th Cir.1984)
 
 
 [6]
 Although the court in Brown discussed the res judicata effect of a prior state court judgment in a federal bankruptcy dischargeability proceeding, Brown applies with equal force to prior judgments rendered by United States District Courts. See, e.g., In re Eskenazi, 6 B.R. 366, 368 (9th Cir.Bkrtcy.App.1980) (determining preclusive effect of prior decision of U.S. District Court)
 
 
 [7]
 In determining the preclusive effect of a prior U.S. District Court judgment in a subsequent district court action, we have applied section 27 of the Restatement (Second) of Judgments. See, e.g., In re Duncan, 713 F.2d 538, 541 (9th Cir.1983)
 
 
 [8]
 The Daleys argue that the bankruptcy court examined the documents attached to the Daleys' motion to dismiss the adversary complaint and to the Franks' response to that motion. Appellees' Brief at 8. As discussed above, the court's opinion reflects no such examination. Moreover, the documents to which the Daleys refer are insufficient for a determination of dischargeability
 The documents attached to the motion to dismiss include an eight page excerpt of the deposition of Walter Frank and a nine page excerpt of the deposition of Joan Frank, taken during the pendency of the prior district court action. The context of the excerpted testimony is unclear. To the extent that the excerpted material can be understood, the material does nothing more than attempt to refute allegations of fraud. The excerpts are not conclusive and at most raise a question of fact regarding the existence of fraud on the part of Daley. The motion to dismiss also includes an index to Walter Frank's deposition, and a copy of the complaint, judgment, and stipulated dismissal in the prior action. None of these items are probative on the issue of dischargeability.
 The documents attached to the Franks' opposition to the Daleys' motion to dismiss include excerpts from depositions of the Franks and of Don Daley. These excerpts tend to indicate Daley's culpability and the Franks' reliance on Daley. The opposition documents also include interrogatories served on Daley and transcripts of Daley's deposition. Daley refused to answer the majority of the questions probative of fraud on the ground that his answers might incriminate him.