**In re Robert William MARESH, Debtor.**

**Norma Jean Ronk, Plaintiff,**

**v.**

**Robert William Maresh, Defendant.**

**No. 00–3204.**

United States Bankruptcy Court, N.D. Ohio.

Sept. 19, 2001.

William Paul Bringman, Fredericktown, OH, for plaintiff.

David B. Shillman, Cleveland, OH, for defendant.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Plaintiff's Motion for Summary Judgment, Memorandum in Support, and Response to the Defendant's Motion for Summary Judgment; and the Defendant's Motion for Summary Judgment, Memorandum in Support, Reply, and Brief Opposing the Plaintiff's Motion for Summary Judgment. This Court has now had the opportunity to review the arguments of Counsel, the exhibits, as well as the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the Plaintiff's Motion for Summary Judgment should be Denied; and that the Defendant's Motion for Summary Judgment should be partially Granted.

### FACTS

The origins of this adversary proceeding stem from the involvement of the Defendant/Debtor, Robert William Maresh (hereinafter referred to as the "Debtor"), in the now defunct Ohio corporation (and its satellite subsidiaries) know .as Family

Resorts of America, Inc. This corporation was originally formed in 1983 by a number of people, including the Debtor and a person by the name of Baird Ronk, for the purpose of buying and operating a campground. The Debtor's role in this corporation was threefold: shareholder; member of the board of directors; and corporate secretary. While serving in these capacities, the Debtor contends that although he performed his statutorily prescribed duties, his actual involvement in the corporation was, comparatively speaking, limited.

In support thereof, the Debtor averred, in an affidavit submitted to the Court, the following:

His participation in the FRA was a part-time occupation;

He and other directors of FRA reasonably relied on a business manager—a one David Monea—to manage the business affairs of FRA and its related companies;

In conjuncture with other members of the board of directors, he actively and regularly exercised general supervisory control over the conduct of company business by participating in regular monthly meetings and by controlling the issuance of certain corporate checks;

He has no formal education in the area of business administration or law. In deciding that FRA would do business using multiple satellite companies, and in participating in the business of those companies, he reasonably relied on the advice of corporate counsel that the company was proceeding lawfully.

(Taken from Defendant's Memorandum in Support of Motion for Summary Judgment at pgs. 14–15).

The Plaintiff, although not altogether disagreeing with the above facts, argues that the Debtor's role in FRA was actually more involved. In making this assertion, the Plaintiff compared the Debtor's role in the corporation to that of FRA's corporate secretary, Baird Ronk, who like the Debtor was both a shareholder and director of the corporation. As will be more fully explained later, the reason for the Plaintiff making this assertion is that Baird Ronk was later found liable for breaching his fiduciary duties as a director of FRA. On this matter, however, the Debtor asserts that his role in FRA was sufficiently distinguishable from that of Baird Ronk's so as to negate the effectiveness of any comparison between the two Parties. For example, the Debtor points out that unlike himself, Baird Ronk was a participant in two boards—a President's Board and an Executive Board—whose members made high-level policy decision for FRA. In addition, the Debtor brought to this Court's attention the fact that Baird Ronk personally managed one of the resort facilities operated by FRA.

On October 13, 1988, FRA filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code; the Honorable James H. Williams from the Bankruptcy Court in Canton, Ohio served as Bankruptcy Judge. Thereafter, on July 20, 1989, the Trustee appointed to administer the assets of FRA filed in the bankruptcy court a complaint against the former directors, officers and shareholders of the corporation, including the Debtor and Baird Ronk, to recover damages allegedly sustained by the corporation as a result of the wrongful acts of the defendants. On this cause of action, a default judgment was eventually entered against the Debtor and some of the other defendants in this action for Five Million dollars ($5,000,000.00). The pertinent facts surrounding the entry of this judgment, as it pertains to the Debtor, are as follows:

On March 7, 1990, Judge Williams granted the Debtor's legal counsel leave

to withdraw as counsel. From that time forward the Debtor was not represented by legal counsel.

On March 12, 1990, Judge Williams ordered the Debtor to respond to the Trustee's discovery requests. In doing so, the Court noted that "Failure to compile [sic] may result in further sanctions as permitted by rule."

On April 30, 1990, Judge Williams ordered the Debtor to appear to show cause why sanctions, including a default judgment, should not be imposed for failure to respond to discovery.

On May, 15, 1990, Judge Williams granted the Debtor until May 21, 1990, to respond to discovery requests. The order provides that failure to comply will result in a default judgment being entered.

On June 8, 1990, the Trustee filed a Motion for Entry of Default Judgment against the Debtor. In support thereof, the Trustee, in an attached affidavit, stated that the Debtor had provided a document entitled "Answers to Interrogatories" but that said answers were not in conformity with the Rules of Bankruptcy Procedure as the answers were unsigned and unsworn.

On July 5, 1990, Judge Williams granted the Trustee's Motion.

The decision to grant the Trustee's Motion for a Default Judgment against the Debtor was later upheld on appeal.

Sometime following the entry of a default judgment against the Debtor, the bankruptcy court granted a motion to reconsider damages. An evidentiary hearing was then held to determine the damages to be assessed against the defendants named in the Trustee's complaint. Contemporaneous with this hearing, a Trial was also conducted to determine whether the other defendants, including Baird Ronk, were actually liable to the Trustee for the damages to be ascertained at this hearing.

On August 16, 1994, the bankruptcy court issued its Memorandum of Decision. In this Decision, the bankruptcy court initially found that Baird Ronk was, in fact, liable to the Trustee for damages. In making this ruling, the bankruptcy court found that Baird Ronk had breached his fiduciary duty in two ways: First, Baird Ronk, by abdicating his director's position in FRA to an Executive Board (of which he was a member), had not complied with Ohio corporate law which requires that a corporate director execute his duties in good faith, for the best interest of the corporation and with due care. Second, the bankruptcy court found that Baird Ronk did not reasonably rely on the advice of a consulting expert—a one David Monea—because, in violation of O.R.C. §§ 1333.91 & 1333.92, FRA was involved in a pyramid scheme. On this latter finding, the bankruptcy court observed that a reasonable investigation would have revealed that the transactions of FRA failed to meet the requirements of Ohio law. *Philip Zimmerman, Trustee v. Baird Ronk, et al. (In re Family Resorts of America, Inc.)*, Ch. 7 Case No. 688–01483, Adv. No. 689–0122, at pgs. 18–19, (Bankr.N.D.Ohio 1994) (Judge Williams). With respect to damages, the bankruptcy court held that the Trustee, on behalf of FPA, was entitled to Seven Million Two Hundred Eight Thousand Four Hundred Thirty-seven dollars ($7,208,437.00) in damages. In fixing damages at this amount the bankruptcy court stated:

> The Trustee presented evidence of $7,208,437.00 in damages at the evidentiary hearing. The defendants did not controvert the accuracy of the evidence regarding the investments shown to have been made. It was contended that the calculation of the amount of interest which had accrued on the notes and was

included in the damage analysis was improper. The court finds that the damage analysis provided was a proper measure of damages and that the defendants must be held jointly and severally liable in the amount $7,208,437.00.

*Id.* at 21. A portion of this judgment, in the amount of Two Hundred Thousand dollars ($200,000.00), was later assigned to the Plaintiff, Norma Jean Ronk (hereinafter referred to as the "Plaintiff"), by the Trustee.

On May 25, 2000, the Debtor petitioned this Court for relief under Chapter 7 of the United States Bankruptcy Code. The Plaintiff then, on August 30, 2000, commenced the instant adversary complaint seeking to have her claim against the Debtor found nondischargeable. The statutory grounds upon the Plaintiff relies for her cause of action is 11 U.S.C. § 523(a)(4) which, in part, excludes from the scope of a bankruptcy discharge those debts incurred by a debtor who, while acting in a fiduciary capacity, commits the act of defalcation. On the issue of the Plaintiff's compliance with the requirements of § 523(a)(4), both Parties filed a Motion for Summary Judgment.

### LAW

**Section 523. Exceptions to discharge**
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not·discharge an individual debtor from any debt—

 (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

### DISCUSSION

Proceedings brought to determine the dischargeability of a particular debt are core proceedings pursuant to 28 U.S.C. § 157(b)(2). Thus, this case is a core proceeding.

The instant case has been brought before the Court upon the Parties' Cross Motions for Summary Judgment. Federal Rule of Civil Procedure 56(c), which is made applicable to this proceeding by Bankruptcy Rule 7056, sets forth the standard for a summary judgment motion and provides for in part: A party will prevail on a motion for summary judgment when "[t]he pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed 2d 265 (1986). With respect to this standard, the movant must demonstrate all the elements of his cause of action. *R.E. Cruise Inc. v. Bruggeman,* 508 F.2d 415, 416 (6th Cir. 1975). To determine whether this standard has been met, the Court is directed to view all the facts in a light most favorable to the party opposing the motion. *Matsushita v. Zenith Radio Corp.,* 475 U.S. 574, 586–588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In addition, in cases such as this where the Parties have filed Cross Motions for Summary Judgment, the Court must consider each motion separately since each party, as a movant for summary judgment, bears the burden of establishing the nonexistence of genuine issues of material fact, and that party's entitlement to judgment as a matter of law. *French v. Bank One, Lima N.A. (In re Rehab Project, Inc.),* 238 B.R. 363, 369 (Bankr.N.D.Ohio 1999). In this regard, the Court will begin its analysis with the Plaintiff's entitlement to Summary Judgment.

 ■ In support of her Motion for Summary Judgment, the Plaintiff relies primarily on the doctrine of collateral estop-

pel which provides that "once an issue is actually litigated and necessarily determined, that determination is conclusive in subsequent suits based on a different cause of action but involving a party or privy to the prior litigation." *Dowling v. United States,* 493 U.S. 342, 347, 110 S.Ct. 668, 672, 107 L.Ed.2d 708 (1990). In support of the applicability of this doctrine, the Plaintiff's argument fundamentally centers around the wrongful acts committed by Baird Ronk and the similarity between these acts and those activities conducted by Debtor. In short, the Plaintiff contends that with respect to his cause of action under 11 U.S.C. § 523(a)(4), Baird Ronk's breach of his fiduciary duty as a director of FRA should be imputed to the Debtor for purposes of applying the collateral estoppel doctrine.

■ Collateral estoppel principles apply to nondischargeability proceedings brought under the Bankruptcy Code. *Grogan v. Garner,* 498 U.S. 279, 285 279, 285, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991). When applying collateral estoppel principles to a nondischargeability proceeding, a bankruptcy court is directed to apply the law of the forum where the original proceeding took place. *Wolstein v. Docteroff (In re Docteroff),* 133 F.3d 210, 214 (3rd Cir.1997). Normally this entails applying the law of collateral estoppel from the state in which the underlying judgment was rendered. In this case, however, since the underlying default judgment was rendered in a federal bankruptcy court, this Court will apply the federal law of collateral estoppel to determine if this judgment should be given preclusive effect. *Id. See also Perez v. Aetna Life Ins. Co.,* 96 F.3d 813, 820 (6th Cir.1996) (the federal law of collateral estoppel controls in nondiversity cases).

■ Under federal law, the collateral estoppel doctrine is only applicable if the party, against whom the doctrine is to be applied, had a full and fair opportunity to actually litigate the issue to be precluded. *N.A.A.C.P. v. Detroit Police Officers Association,* 821 F.2d 328, 330 (6th Cir.1987).[1] At the very least, this standard entails providing a party, at the prior proceeding, the opportunity to put forth evidence in support of their respective positions. *See, e.g., Schreibman v. Zanetti–Gierke (In re Zanetti–Gierke),* 212 B.R. 375, 380 (Bankr. D.Kan.1997). Facially, of course, this requirement has not been met in this case because in the Debtor's prior bankruptcy case a default judgment was entered which, by its very nature, obviates the need for a court to decide a case based upon its actual merits. *Murray v. Wilcox (In re Wilcox),* 229 B.R. 411, 416 (Bankr. N.D.Ohio 1998). In effect then, given the entry of a default judgment, the Debtor, in contrast to the requirements of the collateral estoppel doctrine, was not afforded the opportunity to actually litigate the Trustee's claims in the prior bankruptcy proceeding; a fact which is not changed simply because the Debtor was later given the opportunity to litigate the issue of damages. Along this same line, and in contrast to the Plaintiff's position, it is hard for this Court to conceive of a situation in which a third party's actions (i.e.,

---

1. In *N.A.A.C.P. v. Detroit Police Officers Association,* the Sixth Circuit Court of Appeals set forth four requirements needed before the doctrine of collateral estoppel will be found to be applicable: (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

Baird Ronk's actions) could be imputed to another party without running afoul of the "full and fair opportunity to litigate" requirement of the collateral estoppel doctrine. In this regard, the Plaintiff offered no case law supporting a position to the contrary. The pertinent facts of this case, however, present an additional twist because the default judgment entered against the Debtor was based upon his noncompliance with the Bankruptcy Rules of Discovery, and as the following will explain, in certain instances a default judgment entered as a discovery sanction is given preclusive effect.

■ Generally federal law holds that the doctrine of collateral estoppel is not applicable to those prior judgments entered by default because, as just set forth above, the issues to be precluded were not "actually litigated" in the prior proceeding. *Frank v. Daley (In re Daley)*, 776 F.2d 834, 838 (9th Cir.1985) (citation omitted), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Certain exceptions to this general rule, however, exist when the underlying judgment does not conform to the typical default judgment paradigm; that is, a default judgment entered for some reason other than the defendant's negligence or election not to participate in the prior action. For example, the "actually litigated" requirement of the collateral estoppel test has been applied to default judgments where a litigant substantially participates in the underlying action, but then later, after much expense and time to all the parties involved, decides to abandon his defense. *FDIC v. Daily (In re Daily)*, 47 F.3d 365, 368–69 (9th Cir.1995). However, more importantly for purposes of this case, a default judgment has been given preclusive effect when it is rendered as a discovery sanction. *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 215 (3d Cir.1997). The policy basis for this is sim-

ple: a litigant who abuses the processes and dignity of the court by obstructing the discovery process should not, at a later time, be given the opportunity to litigate an issue could have been previously decided. *In re Docteroff*, 133 F.3d at 215.

■ The above notwithstanding, applying the collateral estoppel doctrine to a default judgment is a rather harsh measure as to do so gives preclusive effect to those averments contained in the plaintiff's complaint without providing the defendant a chance to respond. As a result, in the situation where discovery sanctions are involved, the collateral estoppel doctrine is generally only applied when the conduct surrounding the entry of the default judgment was rather egregious. By way of a specific example, in the case of *In re Docteroff* a default judgment was entered against the debtor in a prior district court case. 133 F.3d at 213. The basis for the default judgment was that the debtor had repeatedly, and in bad faith, refused to submit properly noticed depositions and respond to numerous legitimate requests for the production of documents despite court orders and warnings. *Id.* On appeal, the Third Circuit Court of Appeals, in upholding the applicability of the collateral estoppel doctrine in a later dischargeability proceeding, stated that:

Apparently, [the debtor] realized the meritlessness of his position and decided to frustrate orderly litigation by willfully obstructing discovery.

We do not hesitate in holding that a party such as [the debtor], who deliberately prevents resolution of a lawsuit, should be deemed to have actually litigated an issue for purposes of collateral estoppel application. In doing so, we join with [sic] Ninth and Eleventh Circuit courts of appeals in holding that, under these circumstances, the actual litigation requirement is met. To hold

otherwise would encourage behavior similar to [the debtor's] and give litigants who abuse the processes and dignity of the court an undeserved second bite at the apple. We reject such a result.

*Id.* at 215 (internal quotations and citations omitted). Other cases have reached the same result: *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1324–25 (11th Cir.1995), collateral estoppel applied where debtor, despite substantial participation in the underlying action, refused without any justification to produce documents and appear at a deposition; and *Federal Deposit Ins. Corp. v. Daily (In re Daily)*, 47 F.3d 365, 368–69 (9th Cir.1995), a debtor who actively, but obstructively participates in litigation may be bound by default judgment entered therefrom.

With these cases in mind, the Court turns to the specific circumstances surrounding the entry of the default judgment against the Debtor. In this regard, the facts presented in this case show that the Debtor was exceedingly slow in his efforts to comply with the discovery requests made by the Trustee. Further, the evidence in this case clearly shows that when the Debtor did finally comply with the Trustee's discovery requests (i.e., by the Debtor submitting his answers to those interrogatories propounded by the Trustee), the Debtor failed to properly execute the documentation in compliance with the Bankruptcy Rules of Procedure. However, while such actions are clearly not exemplary, these actions must be set against a couple of additional features of this case. First, and foremost, is the simple fact that the Debtor did, in fact, comply with the Trustee's discovery requests, albeit not in a procedurally correct manner. Secondly, the Debtor's lack of promptness in complying with the Trust-

ee's discovery requests, together with the Debtor's failure to properly execute those interrogatories propounded by the Trustee, can, at least, be partially explained by the fact that the Debtor was without the benefit of legal counsel. Thus, in giving credence to these latter two considerations, it does not appear that the Debtor deliberately or otherwise intentionally set about to interfere with the discovery process in his prior bankruptcy case. As such, the facts of this case do not rise anywhere near to the level of the conduct present in *In re Docteroff* or those other cases which have applied the collateral estoppel doctrine to a prior default judgment entered as a sanction for discovery abuse. Therefore, when all things are considered, the Court finds that applying the collateral estoppel doctrine to those averments contained in the Trustee's complaint from the prior bankruptcy case is not appropriate under the particular facts of this case. Accordingly, the Plaintiff's Motion for Summary Judgment will be denied.

Turning now to the Debtor's Motion for Summary Judgment, it is argued that the facts which give rise to the debt at issue herein do not fall within the scope of a nondischargeable debt for purposes of § 523(a)(4). Under § 523(a)(4), three separate types of misfeasance may give rise to a nondischargeable debt: (1) debts for fraud or defalcation while acting in a fiduciary capacity; (2) debts for embezzlement; and (3) debts for larceny. With respect to these grounds for nondischargeability, the major point of contention between the Parties centers around the applicability of the first exception to discharge: the Debtor's alleged defalcation while acting in a "fiduciary capacity." (Plaintiff's Memorandum in Support of Motion for Summary Judgment, at pg. 4). Accordingly, the Court's analysis, with respect to the Debtor's Motion for Summary Judgment, will address solely this matter.

Under Ohio law, it is axiomatic that the directors of a corporation owe a fiduciary duty to the corporation. *Thompson v. Central Ohio Cellular, Inc.*, 93 Ohio App.3d 530, 540, 639 N.E.2d 462, 468 (1994); O.R.C. § 1701.59(B). However, this fact alone does not necessarily place the director of a corporation in a "fiduciary capacity" for purposes of § 523(a)(4). Instead, it is well established that the precise scope of the defalcation exception to discharge under § 523(a)(4) is solely a question of federal law; as a result, if those requirements needed to satisfy the "fiduciary capacity" requirement of § 523(a)(4) are not satisfied for purposes of federal law, the label attached to the relationship by state law has no bearing on the nondischargeability of such debt. *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 251 (6th Cir.1982). This rule, however, is subject to this caveat: the application of § 523(a)(4) may, and. still frequently depends upon whether those obligations attendant to a fiduciary relationship are present under state law. *Andy Warhol Foundation for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162, 166–67 (2nd Cir.1999).

For purposes of federal law, the Sixth Circuit Court of Appeals, in a series of cases, has specifically addressed the meaning of the term "fiduciary capacity" as that term is used in § 523(a)(4).[2] In doing so, the Sixth Circuit has employed a more narrow interpretation of the term fiduciary as is traditionally provided for under state law. In particular, the Sixth Circuit requires that, in addition to the existence of a fiduciary relationship, the debtor, prior to the time of the alleged injury, must have held the funds at issue in a trust for the benefit of a third party. *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir.1997). Furthermore, the types of trusts that will give rise to a nondischargeable debt under § 523(a)(4) are, in the words of the Sixth Circuit, "limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Id.* at 180.

In this case, at issue is a technical trust, which may be defined as a type of trust arising under a specific statute or the common law. *Purcell v. Janikowski (In re Janikowski)*, 60 B.R. 784, 789–90 (N.D.Ill. 1986). The particular statute at issue is O.R.C. § 1701.59(B) which, in setting forth the duties of a corporation's directors, provides, *inter alia:*

> A director shall perform the director's duties as a director, including the duties as a member of any committee of the directors upon which the director may serve, in good faith, in a manner the director reasonably believes to be in or not opposed to the best interests of the corporation, and with the care that an ordinarily prudent person in a like position would use under similar circumstances.

With respect to this statute, the Debtor asserts that it does not create, as a matter of law, a trust relationship sufficient to establish the "fiduciary capacity" requirement of § 523(a)(4).

As set forth above, it is clear that the mere existence of a fiduciary relationship is insufficient to establish the necessary trust relationship required by § 523(a)(4). Two cases decided by the Sixth Circuit Court of Appeals specifically address the

---

**2.** These cases are, *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 251 (6th Cir.1982), *Capitol Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.)*, 760 F.2d 121 (6th Cir.1985), *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176 (6th Cir.1997).

types of statutes that are sufficient to create the necessary fiduciary relationship under § 523(a)(4). First, in *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 257 (6th Cir.1982), the Court found that Michigan's Building Contract Fund Act met the "fiduciary capacity" requirement of § 523(a)(4); the specific language of this statute provides that:

> In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

Mich.Comp.Laws Ann. § 570.151. In holding that this language created a technical trust for purposes of § 523(a)(4), the Sixth Circuit stated:

> The Building Contract Fund Act satisfies the express or technical trust requirements of section 17(a)(4) [the former § 523(a)(4)]. The trust relationship is unambiguously imposed on a contractor or subcontractor by the language of the statute. The trust res is clearly defined as the monies paid by any person into the building contract fund. The trustee is charged with specific affirmative duties, including paying out trust funds in accordance with the statutorily imposed priority scheme, not using funds for its own purposes so long as trust beneficiaries, laborers, subcontractors and materialmen remain unpaid and using funds obtained for a specific project to first pay for labor and materials furnished for that specific project. The fact that the trustee is afforded some measure of discretion in handling trust

funds does not defeat the trust under section 17(a)(4).

> The Michigan statute satisfies the requirement that the trust exist separate from the act of wrongdoing and not arise ex-maleficio. The fiduciary relationship established by the Building Contract Fund Act arises at the time any monies are paid to the contractor or subcontractor whether or not there are any beneficiaries of the trust at that time and continues until all of the trust beneficiaries have been paid.

*Id.* at 252–53. Similarly, in *Capitol Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.)*, the Sixth Circuit found that under the Michigan Insurance Code of 1956, M.C.L. § 500.1207(1), the "premium payments received by an insurance agency have the status of trust funds for the benefit of the insurance principal." 760 F.2d 121, 124 (6th Cir.1985). The language of this statute provides that:

> An agent shall be a fiduciary for all moneys received or held by him in his capacity as an agent. Failure by an agent in a timely manner to turn over the monies which he holds in a fiduciary capacity to the persons to whom they are owed is prima facie evidence of violation of the agent's fiduciary responsibility.

 In this case, however, a review of the language of O.R.C. § 1701.59(B), *supra*, shows that the statute, which simply codifies Ohio's business judgment rule, clearly does not have any of the characteristics of the above-stated statutes. In more specific terms, O.R.C. § 1701.59(B) does not define a trust res, nor does the statute spell out any of the trustee's fiduciary duties. These characteristics, however, as the above cases illustrate, are necessary facets of a technical trust. In fact, it is clear that a total of three require-

ments must be met—none of which are in present in this case—in order to establish the existence of a technical trust for purposes of § 523(a)(4): (1) the statute must specifically define the trust res; (2) the statute must spell out the trustee's fiduciary duties; and (3) the statute must impose a trust prior to and without reference to the wrong which created the debt. *See Lovell v. Stanifer (In re Stanifer)*, 236 B.R. 709, 715 (9th Cir. BAP 1999); *Tanneberger v. Paeplow (In re Paeplow)*, 217 B.R. 705, 709 (Bankr.D.Vt.1998). Other cases interpreting statutes similar to that of O.R.C. § 1701.59(B) have reached the same result: *Peoples Bank & Trust Co. of Hazard v. Penick (In re Penick)*, 199 B.R. 16, 20 (Bankr.E.D.Ky.1996), *aff'd* 149 F.3d 1184 (6th Cir.1998), Kentucky corporation statute providing that the director of a corporation cannot make distributions that would make the company insolvent did not create the requisite technical trust so as to make the debtor/director a fiduciary for purposes of § 523(a)(4); *Schreibman v. Zanetti–Gierke (In re Zanetti–Gierke)*, 212 B.R. 375, 380–81 (Bankr.D.Kan.1997), the statutory provisions delineating a partner's accountability as a fiduciary under Kansas and Missouri law do not create a technical or express trust.

Therefore, given that O.R.C. § 1701.59(B) does not create any specific trust res, the Court must, in accordance with those herein listed decisions rendered by the Sixth Circuit Court of Appeals find that the Plaintiff will not, as a matter of law, be able to sustain her burden under the defalcation exception to discharge contained in § 523(a)(4). Accordingly, to the extent that the Plaintiff seeks to have her claim against the Debtor held nondischargeable on the basis that it arose from the Debtor's act of defalcation while acting in a fiduciary capacity, the Court must grant the Debtor's Motion for Summary Judgment. At this time, however, the Court does not have before it sufficient information to find that the Debtor is entitled to a judgment in his favor with respect to that portion of the Plaintiff's claim under § 523(a)(4) for embezzlement or larceny. Therefore, in conformance with Bankruptcy Rule 7056, the Plaintiff will be afforded the opportunity to present evidence in support thereof.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Motion for Summary Judgment submitted by the Plaintiff, Norma Jean Ronk, be, and is hereby, DENIED.

It is **FURTHER ORDERED** that the Motion for Summary Judgment submitted by the Defendant, Robert William Maresh, be, and is hereby, GRANTED to the extent that it determines the Defendant's liability under 11 U.S.C. § 523(a)(4) for defalcation while acting in a fiduciary capacity.

It is **FURTHER ORDERED** that Plaintiff has Twenty-one (21) days, commencing from the entry of this Order, to Report to the Court what action she will take in this matter regarding her cause of action under 11 U.S.C. § 523(a)(4) for embezzlement and larceny.

It is **FURTHER ORDERED** that if the Plaintiff fails to report to the Court within the time frame enumerated in this Order, this adversary proceeding will be dismissed.